JS 44   (Rev. 07/16)

# CIVIL COVER SHEET

16.cv.5025

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Park, Sean

## DEFENDANTS

Temple University; Ismail, Amid; Sperazza, Leona; Brown, Stephen; Hossaini, Mehran; Palermo, Matthew; Godel, Jeffrey, John Does 1-10

**(b)** County of Residence of First Listed Plaintiff    Los Angeles, CA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Zachary Meinen and Joseph Montgomery
Montgomery Law, LLC, 1420 Locust St. Suite 420
Philadelphia, PA 19102

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question *(U.S. Government Not a Party)*

☐ 2  U.S. Government Defendant

☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | **LABOR** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Relations | ☐ 862 Black Lung (923) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | Leave Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation - Transfer

☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Sec. 1983

Brief description of cause:
Wrongful University Expulsion

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $   In excess of $150,000

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE   9-20-16

SIGNATURE OF ATTORNEY OF RECORD    # 319861

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

SEP 20 2016

## UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: **445 North Rossmore Avenue Los Angeles, CA 90004**

Address of Defendant: **1801 N. Broad Street  Philadelphia, PA 19122**

**16   5025**

Place of Accident, Incident or Transaction: **1810 N. Broad Street Philadelphia, PA 19122**

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))      Yes☐   No☑

Does this case involve multidistrict litigation possibilities?      Yes☐   No☑

*RELATED CASE, IF ANY:*

Case Number: _____   Judge _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐   No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐   No☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐   No☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐   No☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☑ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

### ARBITRATION CERTIFICATION

*(Check Appropriate Category)*

I, **Zachary Meinen**, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: **9-20-16**   _____   **319861**
Attorney-at-Law   Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: **9-20-16**   _____   **319861**
Attorney-at-Law   Attorney I.D.#

CIV. 609 (5/2012)   SEP 20 2016



## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| SEAN PARK | : | CIVIL ACTION |
| v. | : | |
| Temple University, et. al | : | 16 NO. 5025 |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.       ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.       ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.       ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)       ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (X)

| 9-20-16 | | ZACHARY MEINEN |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** Plaintiff |
| 215-650-7563 | 215-650-7563 | Zach@ed-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

SEP 20 2016



$400

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SEAN PARK
445 North Rossmore Avenue
Los Angeles, CA 90004
                    Plaintiff,

          v.

TEMPLE UNIVERSITY
1801 N. Broad Street
Philadelphia, PA, 19122

AMID ISMAIL
1801 N. Broad Street
Philadelphia, PA, 19122

LEONA SPERAZZA
1801 N. Broad Street
Philadelphia, PA 19122

STEPHEN BROWN
1801 N. Broad Street
Philadelphia, PA 19122

MEHRAN HOSSAINI ZADEH
1801 N. Broad Street
Philadelphia, PA 19122

MATTHEW PALERMO
1801 N. Broad Street
Philadelphia, PA 19122

JEFFREY GODEL
1801 N. Broad Street
Philadelphia, PA 19122

JOHN DOES 1-10

                    Defendants.

Civil Action No.

JURY TRIAL DEMANDED

## COMPLAINT

### A. Introduction

Dr. Sean Park brings this Civil Action against Temple University, a public university, which receives funds from the Commonwealth of Pennsylvania, federal funds, and is a State related university, and named individuals for violations of constitutional and civil rights under 42 U.S.C. § 1983, breach of contract, unjust enrichment, retaliation, and defamation of character.

### B. Parties

1. Plaintiff Sean Park, is an individual, who resides at 445 North Rossmore Avenue, Los Angelas, CA 90004.

2. Defendant Temple University, is a public university, operated under color of State laws by the Commonwealth of Pennsylvania, receiving funding from the Commonwealth of Pennsylvania. Its primary address is 1801 N. Broad Street, Philadelphia, Pennsylvania 19122.

3. Defendant, Amid Ismail, is the dean of Maurice Kornberg School of Dentistry at Temple University, employed at 1801 N. Broad Street, Philadelphia, Pennsylvania 19122.

4. Defendant Leona Sperazza, is the Associate Dean for Patient Care at Maurice Kornberg School of Dentistry at Temple University, employed at 1801 N. Broad Street, Philadelphia, Pennsylvania 19122.

5. Defendant Stephen Brown, is faculty at Maurice Kornberg School of Dentistry at Temple University, employed at 1801 N. Broad Street, Philadelphia, Pennsylvania 19122.

2

6.  Mehran Hossaini Zadeh, is faculty at Maurice Kornberg School of Dentistry
    at Temple University, employed at 1801 N. Broad Street, Philadelphia,
    Pennsylvania 19122.

7.  Matthew Palermo is faculty at Maurice Kornberg School of Dentistry at
    Temple University, employed at 1801 N. Broad Street, Philadelphia,
    Pennsylvania 19122.

8.  Jeffrey Godel is faculty at Maurice Kornberg School of Dentistry at Temple
    University, employed at 1801 N. Broad Street, Philadelphia, Pennsylvania
    19122.

9.  John Does 1-10 are all individuals (or entities) not yet identified that
    participated in the alleged facts of this complaint.

10. All natural persons are sued in their official and individual capacities.

**C.  Jurisdiction and Venue**

11. This action is brought under 42 U.S.C. Sec 1983 and jurisdiction is based
    upon 28 U.S.C. Sec. 1331 and 1343(1), (3), and (4). Plaintiff further invokes
    the supplemental jurisdiction of this Court under 28 U.S.C. Sec. 1367(a) to
    adjudicate claims arising under state law.

12. Venue in this District is proper under 28 U.S.C. Sec. 1391(b).

**D.  Facts**

13. Plaintiff attended Temple University ("Temple").

14. On May 24, 2013, prior to applying to Temple, Plaintiff surrendered his
    dental license in California, and he accepted all charges pending against him
    resulting from an Accusation made against his license on July 13, 2012. As
    part of the same allegations, he also surrendered his license in Texas.

15. Plaintiff was accepted to Temple in June 2014 to the Graduate Specialty Program in Periodontology and Oral Implantology and a Masters in Oral Biology ("the program").

16. Prior to offering Plaintiff a position in the program at Temple, Plaintiff first submitted an application and was interviewed by four members of Temple staff.

17. The application for admittance in the program at Temple did not inquire about previous licensure status of the applicant.

18. During the four separate interviews, Plaintiff was never asked to divulge any information regarding his license status in previous states.

19. An active dental license is not a requirement to participate in the program.

20. A suspended or revoked license does not disqualify a student from the program.

21. There is no requirement – from either Temple or by law - that a prospective student **must** disclose that he previously surrendered a license when applying to or attending Temple.

22. Dr. Park applied to many other universities for similar programs. Multiple programs offered him interviews **knowing his license status** – because they diligently requested this information on their application. Specifically, the University of Michigan offered him a position knowing his complete history. If adverse license history was an issue at Temple, and Temple was forthright about this stance, then Plaintiff could have attended these other universities and completely avoided the injuries giving rise to this Complaint.

4

23. From June 2014 through June 2, 2016, Dr. Park was never asked about his previous license status, and he had no affirmative duty to disclose the previous license status.

24. Plaintiff practiced under a training permit while enrolled in the program.

25. When applying for the training permit, Plaintiff was asked if he had previously held licenses in any states, for which he answered honestly. Plaintiff was granted the training permit to practice while in the program.

26. The application did not include an inquiry as to the status or "good standing" of previous licenses – only whether he had previously held a license.

27. Via the training permit, Dr. Park practiced under supervising staff licensure. Specifically, he practiced under Dr. Suzuki.

28. Plaintiff was told that after submission of his application that they would verify the information and it would be signed off on by Dr. Suzuki.

29. The supervising staff failed to fully investigate - or even inquire about - Dr. Park's licensure status. This was a mistake by Dr. Suzuki.

30. Upon information and belief, other students at Temple also have similar non-disclosed negative action on their previous dental licensure.

31. None of the persons that received or reviewed Dr. Park's application inquired as to the status of his previous license.

32. The status of Dr. Park's previous dental licenses and any relating court filings are all public domain, free and viewable online.

33. Upon information and belief, Dr. Suzuki – the individual that signed off on Dr. Park's training permit and head of the program when Dr. Park was accepted – was recently terminated from Temple. It is unknown the reason for Dr. Suzuki's termination. However, Dr. Park assumes that one of the

factors was Dr. Suzuki's failure to investigate the status of students practicing under his care and supervision.

34. Some time on or prior to June 2, 2016, a patient reported to Temple that they discovered Plaintiff had previously lost his license, presumably through a simple internet search. The patient reported this to Temple.

35. On June 2, 2016, Plaintiff was pulled out of rotations for a meeting with the Dean and Associate Dean, who questioned Plaintiff on various topics including the status of his previous dental licenses. Plaintiff disclosed that he had previously lost his license to practice, and that he would provide a letter from his attorney regarding the circumstances of his surrender. He did describe briefly that the surrender was based on allegations of billing, advertising, and forgery of documents at his previous practice.

36. Those questioning Dr. Park indicated that they were satisfied with this proposition and gave him until June 8, 2016 to provide additional clarification on the circumstances regarding his license surrender.

37. Plaintiff's previous attorney provided a letter on June 6, 2016 that noted the complete circumstances of Plaintiff's surrender of his license, including the fact that he accepted all charges as true by surrendering the license.

   a. Nothing in the letter was false or misleading, nor did Temple ever allege that the letter contained false or misleading information.

38. The letter from Dr. Park's attorney on June 6, 2016 also indicated that if Temple should have any questions regarding the letter they could contact him directly.

39. To Plaintiff's knowledge, Temple did not follow up with the attorney to inquire about possible ambiguities or missing information from the letter. By all accounts the letter was satisfactory.

40. Despite the truthful and timely information provided to Temple, Dr. Park was subjected to a disciplinary hearing on June 23, 2016 for providing false information.

41. A hearing was held on June 23, 2016 on the issue of whether Plaintiff violated the Temple University Student Conduct Code "by failing to inform the Kornberg [School] of Dentistry of surrender of [plaintiff's] license."

    a. Important to note that failure to inform of a surrendered license is not a violation of any section of the Temple University Student code.

42. Hearing was held on July 1, 2016 on the issue of whether Plaintiff violated the Temple University Student Code by "failing to fully disclose the circumstances of your voluntary surrender of your license."

43. The section of the Temple University Student Code cited was "Article III, paragraph C. Providing false or misleading information, verbally or in writing to the University or university personnel."

44. Regarding the issue presented on June 23, 2016: Plaintiff did not fail to inform Temple of his surrender because he was never required to. When asked, he provided true and complete facts. Per the letter of the code, this issue as stated does not violate the section of the Code cited.

45. Dr. Park's actions do not even form a *prima facie* violation of the Code as stated.

46. Regarding the issue presented on July 1, 2016: Again, plaintiff never "provided" false or misleading information. In fact, to the extent that

Plaintiff's initial disclosure of information may have been misinterpreted or incomplete, he asked to provide clarification from his attorney to clear up any questions the staff had.

47. The attorney further offered clarification or extra information if needed.

48. Temple did not request clarification.

49. Dr. Park and his attorney did not "provide false or misleading information." To the contrary, they both provided completely truthful information with an open invitation to clarify if needed.

50. By the very basic definition of the word "providing," no reasonable person could conclude that Dr. Park "provided" misleading information.

51. The charges as stated do not reference any of the information "provided" by Dr. Park that was misleading or false. The charges only reference that which Dr. Park allegedly *did not provide*.

52. After hearing, Plaintiff was expelled from the University after violating no written rules of the university.

53. At hearing the hearing officer continually referenced what he felt was "best" or the "right thing" to do, but was not able to tie this to any distinct or affirmative rule.

54. Plaintiff was essentially subject to discipline because the way he handled the situation was not the way that Temple would have preferred. However, his actions violated no rule.

55. Plaintiff was expelled from Temple.

56. On July 11, 2016, Plaintiff appealed the decision of the board based on new evidence and procedural flaw (the only available appeal options).

8

a. Temple procedure does not allow Plaintiff to appeal for any other reasons. One cannot challenge the factual findings of the Honor Board, claim an abuse of discretion, or challenge the interpretation of the Student Handbook by the Honor Board. Plaintiff's appeal would have included a much wider breadth of issues if available.

57. As part of his appeal, Dr. Park asked for a complete disclosure of records from Temple. The relevant portion of the request stated:

> "We hereby request all documents held in Dr. Park's student file. We request full audio transcript of the hearings, any and all written findings or notes regarding the hearings, and all email communication between Temple staff regarding Dr. Park and/or Dr. Park's disciplinary hearings, including both work and personal email accounts."

58. Dr. Park did not receive any such documents aside from a recording of only the second hearing.

59. Despite his request, Plaintiff was never provided a transcript (or recording) of the first hearing.

60. As part of his appeal, Plaintiff provided multiple letters of recommendation and a plea for alternative punishment due to Temple's failure to inquire about Plaintiff's surrender.

61. Plaintiff argued on appeal that he did not violate the letter of the Code because he never "provided false information" because no one ever inquired about the information that was allegedly concealed, and there was no rule that required or prompted him to volunteer this information. When actually

questioned concerning the surrender of his license, Plaintiff fully disclosed the circumstances of surrender.

    a. The review board did not consider this avenue of appeal.

62. Only one witness testified at the second hearing, Leona Sperazza. This witness read a prepared statement.

63. The four individuals who interviewed Plaintiff prior to attendance were not called to testify.

64. The two individuals who conducted the informal investigation during which Plaintiff allegedly lied did not testify.

65. No individual from the admissions office testified.

66. Dr. Park alleges there was not sufficient evidence to establish that he "provided" false information.

67. Plaintiff was not given adequate notice to prepare for the hearing. Prior to the final hearing, Dr. Park was given 48 hours-notice of the date of the hearing.

68. Directions included with the notice of the hearing provided that "more than" 48 hours-notice were required if counsel would be attending the meeting.

69. Directions included with the notice of the hearing stated a 72-hour requirement for a request for a continuance.

70. Because the notice was given less than 48 hours prior to hearing, Dr. Park was unable to request a continuance or have counsel present.

71. 48 hours was also inadequate time to locate favorable witnesses, affidavits, and evidence.

72. Dr. Park alleges that this timing was intentionally meant to deny him a fair hearing.

73. Dr. Park reports that he received information that Dr. Brown indicated the outcome of the hearing prior to the hearing date.

74. Many faculty and colleagues supported Dr. Park's continued enrollment at the program.

75. Dr. Park was one of the most talented Doctors within the program. He was an asset to the less experienced in the program, and many reported that he was essentially another instructor in the program.

76. There were no negative indicators in Dr. Park's record. He has never been subject to academic or behavior related investigation. He excelled academically and excelled in the clinical setting.

77. Despite being held in high esteem by faculty, faculty were directed to "stay out" of the situation.

78. Leona Sperrazza was the only defendant that testified at the second hearing.

79. On August 12, 2016 Plaintiff received notice that his appeal was denied.

   a. An *ad hoc* faculty board found "no procedural defects that substantially prevent [Dr. Park] from obtaining a full and fair hearing on the merits," and "new evidence you presented was not sufficient to alter the decision."

80. The *ad hoc* board did not review the hearing findings for any other defects. They did not review for abuse of discretion, misreading of the code of conduct, or any other fatal flaws alleged by Dr. Park.

81. Plaintiff has exhausted the University appeals process. Plaintiff's attorney has attempted to resolve this matter outside of litigation to no avail.

82. Due to his status as an expelled student, Plaintiff is effectively unable to attend other universities and continue his education.

11

83. Due to his inability to obtain the certification pursued, Dr. Park's earning capacity is expected to be reduced by more than 50% in the future.

84. Dr. Park pursued this advanced degree and certification from Temple, in part, to show good faith and rehabilitation with regard to his surrendered licenses. His expulsion from Temple damages his ability now to be reinstated to practice in California and Texas.

85. Dr. Park maintained a second residence so he could attend the program. He kept this residence in reliance that he would be allowed to complete the program.

86. All defendants acted knowingly, improperly and with deliberate indifference to the Plaintiff's Constitutional rights.

87. All defendants' actions described herein were taken in accordance with Temple custom, policy, and/or practice.

88. All defendants' continued their actions even after appeal of multiple students complaining of similar constitutional violations.

89. All defendants' conduct was done willfully and wantonly and/or with reckless disregard of Plaintiff's rights and feelings.

90. All defendants' conduct under color of law proximately caused the deprivation of Plaintiff's federally protected rights and resulting injuries.

91. All defendants' conduct was so obviously violative of Plaintiff's rights, and Plaintiff's resulting damages so severe, that it shocks the conscience.

### Count I – §1983 – Violation of Due Process

### Against all Defendants

92. Plaintiff incorporates the above and below paragraphs as fully set forth herein.

93. Defendants denied Dr. Park's right to due process arising under the Fourteenth Amendment to the U.S. Constitution by failing to apply fair and impartial procedural policies, thereby depriving Dr. Park of fundamental rights.

94. Dr. Park has protected property interests in his investment in the program at Temple, his professional reputation, his earning ability and potential, and the value of his education and his privacy, as well as a liberty interest in freedom from arbitrary and wanton intrusions into his personal and professional life.

95. Jeffrey Godel served as hearing officer chair for the hearing panel.

96. Defendants misapplied their own published procedures as Dr. Park violated no written rule.

97. Defendants, Godel, Palermo, and Hossaini were all members of the hearing committee that conducted the hearing against Dr. Park. All were biased against Dr. Park.

98. Ultimate decision of punishment after recommendation by the board was made by defendant Ismail. Defendant Ismail's punishment did not coincide with the severity of the claims against Dr. Park.

99. Defendants failed to provide Dr. Park crucial evidence to prepare his appeal. Attorney requested full disclosure of student's file prior to hearing, but was not provided all documents requested.

100. Dr. Park was denied due process by inadequate notice as Dr. Park was only provided 48 hours-notice of the hearing. Coincidentally, 48 hours notice was required for Dr. Park to notify Temple of both counsel and witnesses he intended to call. Therefore, it was impossible for Dr. Park to obtain either.

101. Dr. Park was denied due process by denial of representation by counsel.

102. Dr. Park was denied due process by Defendants providing inadequate notice of the witness that testified against him.

103. Dr. Park was denied due process by prejudicial scheduling, intentionally designed to make his attendance as difficult as possible. Dr. Park was specifically asked which times did not work for him, and Temple responded by scheduling him on a day and time at which he had specifically indicated he was not available .

104. Dr. Park was denied due process by not being allowed to directly question witnesses which testified against him. Procedure at the hearing requires that questions directed to witnesses must be given to the hearing officer, after which he/she rephrases them and approves them before he/she asks them. Therefore, the accused never has the opportunity to directly confront or question those making accusations against him.

105. Dr. Park was denied due process when witnesses were allowed to make unilateral, written prepared statements without questions from the hearing officer or Dr. Park.

106. Dr. Park was denied due process when Defendants intimidated and/or dissuaded other Temple faculty from testifying on Dr. Park's behalf. Dr. Park was notified by multiple individuals that Temple's direction to program staff and named Defendants was to "stay out" of Dr. Park's hearing.

107. Dr. Park was denied due process when Defendants predetermined the outcome of the hearing.

108. Dr. Park was denied due process when Defendants held the hearing in front of a biased tribunal. The tribunal was focused on what they thought was best practice or the most ethical thing to do, when they should have been

14

considering the rules of Temple and whether Dr. Park violated them. The facts and supporting evidence provided by Dr. Park were blatantly ignored.

109. Dr. Park was denied due process by Defendants' limiting the scope of appeal for Honor Board decisions.

110. Dr. Park was denied due process by Defendants' failing to apply the actual letter of the student handbook with fidelity.

111. Due process was denied when the hearing officer relied on what he assumed the four admission interviewers would tell him regarding the interviews. The four interviewers should have been called to testify.

a. Upon information and belief, the hearing officer conducted ex-parte questioning of these individuals to gather information regarding Dr. Park's initial interviews with these individuals.

b. The hearing officer explicitly threatened Dr. Park that he would ask the four individuals if Dr. Park's version of the interviews was correct.

112. In general, the hearing officer relied on *ex parte* communication and statements made outside the hearing to make his decision.

113. In general, the initial decision was based on insufficient evidence and a misreading of Temple's handbook.

114. Temple's decision to expel Dr. Park constitutes an abuse of discretion by the conduct board, Dean Ismail, and by the *ad hoc* review panel. Dr. Park's actions do not even amount to a *prima facie* violation of any written code at Temple. As such, no reasonable person could conclude that Dr. Park should be deprived of his right to continue in the program. Therefore, Dr. Park has been denied his right to due process.

115. Due to Defendants violating Plaintiff's right to due process, Plaintiff has incurred significant damages.

116. Temple is a state actor.

117. All Defendants acted under color of state law.

118. Each of the individual Defendants knew or should have known that their actions complained of herein violated clearly established federal rights.

119. All named defendants worked individually and/or in conspiracy to violate Plaintiff's rights complained of herein.

### Count II – § 1983 – Equal Protection Violation

### Against all Defendants

120. Plaintiff incorporates the above and below paragraphs as fully set forth herein.

121. Dr. Park's fundamental constitutional right to equal protection has been violated as an Asian American (non-white, non-U.S. born) student and as a student with a previously surrendered dental license.

122. Dr. Park is a naturalized United States citizen.

123. Defendants have failed to punish students of other races and cultural backgrounds for similar conduct in similar circumstances.

124. Defendants have failed to punish United States-born students for similar conduct in similar circumstances.

125. An active license is not a requirement of the program.

126. Upon information and belief, other student(s) do not have active licenses and/or have suspended/revoked licenses and those students were subject to different punishment than Dr. Park.

127. Upon information and belief, other student(s) have failed to disclose previous licensure violations and were not subject to the same punishment as Dr. Park.

128. Upon information and belief, Temple has a pattern and practice of targeting non-white and foreign born students, implementing stricter penalties when such students commit alleged code violations.

129. Due to Defendants violating Plaintiff's right to equal protection, Plaintiff has incurred significant damages.

130. All defendants worked individually and/or in conspiracy while violating Plaintiff's rights.

### Count III – Breach of Contract

### Against Temple

131. Plaintiff incorporates the above and below paragraphs as fully set forth herein.

132. Plaintiff had a valid contract with Defendant, where Plaintiff agreed to complete the program requirements and pay tuition, and Defendant would provide Plaintiff with an education and a degree/certificate upon completion of program requirements.

133. Plaintiff and Defendant entered into contract willfully and without deceit. Plaintiff fully disclosed the answer to every inquiry on the application to attend Temple, and Plaintiff honestly answered the questions of four interviewers prior to acceptance. At no point did Plaintiff deceive Temple.

134. Dr. Park relied on the application process and interview process at Temple to sufficiently vet the information needed to make an admission decision.

135. The requirements of the program were outlined in student handbooks and other written postings that are drafted and approved by Defendant. Dr. Park relied on these posted requirements when applying and agreeing to attend Temple.

136. Any ambiguous terms in the contractual understanding between Dr. Park and Temple should be interpreted against Temple, as it drafted any ambiguous terms.

137. Temple's presumed position is that Dr. Park violated one of these posted terms, such that Dr. Park allegedly breached the contract with Temple, and expulsion was warranted.

138. The section of the contract at issue is whether Plaintiff was "providing false or misleading information."

139. The plain meaning of the word "provide" would be, "to give, or furnish."

140. The plain meaning of "conceal" or "failing to disclose" would be antonyms of "provide."

141. As constructors of the written contract terms contained in the student handbook, Temple had the ability to include a prohibition from concealing or failing to disclose certain information, which it has failed to do.

142. Therefore, Plaintiff did not violate any posted requirement. In fact, the letter of the rule is the exact opposite of what Defendant claims Plaintiff did.

143. Plaintiff timely paid all tuition due to Temple. Plaintiff even paid the tuition due for the Fall of 2016, despite the fact that he was not allowed to attend the program.

144. Temple breached the contract with Plaintiff by expelling Plaintiff, contrary to the letter of the code of conduct and other Temple materials on which

18

Plaintiff relied in, among other things, accepting admission to the program, working in the program and providing services to Temple in fulfillment of his obligations to Temple, and surrendering other opportunities to work and study in other institutions. .

145. Temple was not legally justified when breaching the contract with Plaintiff.

146. Plaintiff has incurred damages due to the breach of contract by Temple including but not limited to tuition and fees, lost wages, value of professional services, reputational damage, emotional damage, and other non-pecuniary damages.

147. Plaintiff is owed compensation for damages resulting from the breach of contract by Temple.

### Count IV – Unjust Enrichment

### Against Temple

148. Plaintiff incorporates the above and below paragraphs as fully set forth herein.

149. Plaintiff performed dental procedures on behalf of Defendant. Defendant charged the patients (or patients' insurance) for the services Plaintiff provided. Temple is therefore profiting off of clinical procedures performed by students.

150. Plaintiff did not receive any payment for the work he performed while attending Temple.

151. Plaintiff did not pursue receipt of payment for his services during enrollment because he believed that he was performing these services as part of a program with posted guidelines for which he would receive a certification in a specialized degree with great value to him.

152. Plaintiff followed all posted guidelines.

153. Defendant, unjustly, was enriched by Plaintiff performing these free dental procedures, while Plaintiff relied on Defendant to provide the certificate upon completion.

154. Defendant did not confer the expected certification to Plaintiff due to premature expulsion from the program. Further, Defendant expelled Plaintiff from the program before completion based on no written rule.

155. Defendant did not allow Plaintiff to complete certification based on an error by Defendant. Defendant could have investigated and inquired about dental license status and failed to do so. These actions by Temple were not foreseeable to Plaintiff as he was relying on their perceived status as an established university with comprehensive admissions procedure.

156. Conclusively, Defendant was unjustly enriched and Plaintiff is owed compensation for the dental procedures that Defendant received for work performed by Plaintiff and/or the value of the specialist degree he is owed.

157. Plaintiff paid tuition to attend the program at Temple.

158. Plaintiff abided by all posted rules while enrolled at Temple, however, Plaintiff was expelled.

159. Plaintiff was in good academic standing when dismissed.

160. Temple unjustly received tuition payments from Plaintiff, who was wrongfully expelled.

161. By information and belief, Plaintiff is not the first student whose rights were violated in this fashion. Unfortunately, it is common custom and practice for Temple to take advantage of dental students' free labor before expelling them for inappropriate reasons.

162. Plaintiff is owed compensation for the tuition and fees paid, and services provided, to Defendant.

163. While performing clinical operations and procedures Dr. Park was relied upon by students and faculty for instruction and guidance due to his high level of skill and expertise. Dr. Park's presence in the clinical setting enriched all participating members and faculty. Temple benefited from Dr. Park's participation in the clinical setting. Temple was unjustly enriched by Dr. Park's participation in the program. Dr. Park should be compensated for this extra value he added to the program.

## Count V – Retaliation

### All Defendants

164. Plaintiff incorporates the above and below paragraphs as fully set forth herein.

165. Plaintiff reports that Dr. Brown was believed to "play favorites" when assigning cases in the clinical rotations. He favored certain students over other students.

166. Upon information and belief, this bias of Dr. Brown's had no justification based on talent or skill, but was based on whom Dr. Brown liked more than other students. This practice favored United States-born white students over foreign-born students.

167. Plaintiff reported this perceived favoritism to Dr. Wada, who instructed Plaintiff to gather evidence to substantiate this claim.

168. Shortly after reporting this presumed bias, Dr. Park was expelled from the program.

169. Upon information and belief, Dr. Park's expulsion was an act of retaliation for Dr. Park's seeking fair assignment of cases in the clinical rotation.

170. Upon information and belief, other students in the program report similar unfair assignment of cases in the clinical rotations by Dr. Brown.

171. Upon information and belief, Dr. Brown played a large role in Dr. Park's expulsion. Dr. Brown told another student in the program, prior to Dr. Park's hearing, that Dr. Park would be expelled. The hearing was predetermined.

172. All Defendants worked individually and/or in conspiracy to retaliate against Plaintiff for attempting to secure equal treatment in the program.

## VI - Defamation of Character
### All Defendants

173. Plaintiff incorporates the above and below paragraphs as fully set forth herein.

174. Plaintiff was accused of "providing false or misleading information," and this information has been publicized to many faculty, staff, and students in the program. This information has also been wrongfully disseminated to third parties.

175. It is false that Plaintiff "provided false or misleading information." In fact, all of the information "provided" to the school was true and open to clarification at any time.

176. Defendants made this accusation against Defendant with intent to humiliate him, damage his reputation, and defame his character.

177. Accusations and honor board hearings are supposed to be confidential, however, all individual defendants openly discussed and disseminated intimate details regarding the false accusations and hearing with the general Temple student and faculty body as well as other third parties.

178. Defendant suffered special reputational harm. He has lost respect in the community and lost the ability to pursue future certification in Dentistry. Information about the false claims against Dr. Park's record are now available to other universities and dental programs as well as the dental boards of various states. The false statements publicized by the Defendants have caused and will cause significant damages.

179. All Defendants worked individually and/or in conspiracy to defame Plaintiff.

**WHEREFORE,** Plaintiff requests this Court issue a Preliminary Injunction to prevent further deprivation of his federal and common law rights and immediately reinstating Plaintiff into the program as a student in good standing without any expulsion noted on his transcript and, subsequent to a trial, issuing a Permanent Injunction against Temple confirming Dr. Park's full reinstatement and prohibiting any further violations of Plaintiff's federal and common law rights. Plaintiff requests an award for any and all present and future damages incurred owing to Defendants' actions, as well as payment of the amount that Temple was unjustly enriched, including tuition and fees, payment for services performed, and any other enrichment accrued to Temple as a result of Plaintiff's attendance. Plaintiff also seeks any and all recoverable relief this Court deems fair and appropriate.

Respectfully Submitted,

MONTGOMERY LAW, LLC

Joseph W. Montgomery, Esquire
Attorney ID 209527
1420 Locust Street, Suite 420
Philadelphia, PA 19102
215-650-7563
joe@ed-law.com
Attorney for Plaintiffs

-And-

Zachary Meinen, Esquire
Attorney ID 319861
1420 Locust Street, Suite 420
Philadelphia, PA 19102
215-650-7563
zach@ed-law.com
Attorney for Plaintiffs

Dated: Tuesday, September 20, 2016