IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SEAN PARK,<br>　　　　　Plaintiff,<br><br>　　v.<br><br>TEMPLE UNIVERSITY, AMID ISMAIL,<br>LEONA SPERAZZA, BELINDA BROWN-<br>JOSEPH, MEHRAN HOSSAINI ZADEH,<br>MATTHEW PALERMO, JEFFREY<br>GODEL & JOHN DOES 1-10,<br>　　　　　Defendants. | CIVIL ACTION<br><br><br><br>NO.  16-5025 |

**MEMORANDUM OPINION**

Plaintiff, Dr. Sean Park, challenges Temple University's decision to expel him from a graduate program at its School of Dentistry.  He asserts violations of his due process and equal protection rights under 42 U.S.C. § 1983 against each of the Defendants as well as state law claims of breach of contract and unjust enrichment against Temple, and retaliation and defamation against all Defendants.  Before the Court is the Defendants' motion to dismiss his Complaint.

**I.　　BACKGROUND**

Before he applied to Temple, Park practiced dentistry in California.  But, in 2013, he surrendered his California and Texas dental licenses after being accused of – and admitting to – billing, advertising, and documentary irregularities.  He did not disclose the surrender on his Temple application and, once he was accepted as a student, he practiced there under a training permit.

Two years after Park's matriculation, when a patient reported his license status to Temple, Defendants, Dean Amid Ismail and Associate Dean Leona Sperazza, met with and

questioned him about it. He briefly described the situation and, a few days later, his attorney sent a letter to Temple describing the surrender in greater detail.

Following these developments, Park was cited for violating provisions of Temple University's Student Conduct Code. Temple held two hearings each concerning aspects of how he handled the matter of the surrender of his licenses in his dealings with the university. The hearing panels were made up of Temple faculty members, including Defendants Mehran Hossaini Zadeh, Matthew Palermo and Jeffrey Godel. Once the hearings were complete, Dean Ismail considered the panels' recommendations and decided to expel Park.

Park timely appealed the decision on the grounds that he had new evidence to offer and that the procedure was flawed – the only two grounds upon which appeal is permitted – but his appeal was denied on both grounds. Here Park continues to maintain that there were numerous procedural defects in the hearings, the appeal, and Dean Ismail's final review and recommendation. He also contends that Dr. Belinda Brown-Joseph, who was in charge of making clinical assignments, favored "United States-born white students over foreign-born students," a belief he reported to another faculty member, Dr. Wada, shortly before the expulsion.

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In light of *Twombly*, 'it is no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of [the proscribed] conduct.'" *Great W. Mining &*

*Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 177 (3d Cir. 2010) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

### III. DISCUSSION

#### A. Fourteenth Amendment Due Process (Count One)

Plaintiff asserts a Section 1983 claim for violation of due process against all Defendants. In their Motion to Dismiss, they argue these claims must be dismissed: 1) against all Defendants because the Complaint reveals that Park was afforded all the process that was constitutionally required; and, 2) against the individually named Temple employees because they are entitled to qualified immunity.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution guards against state deprivations of life, liberty, or property without due process of law. Graduate students at public universities like Temple have a property interest in their continued education and enrollment. *See Palmer ex rel. Palmer v. Merluzzi*, 868 F.2d 90 (3d Cir. 1989) (citing *Goss v. Lopez*, 419 U.S. 565 (1975)[1]); *see also Gorman v. Univ. of Rhode Island*, 837 F.2d 7, 12 (1st Cir. 1988) (citing *Goss*, 419 U.S. at 574-75). It is undisputed that Plaintiff has alleged an interest that qualifies for due process protections. The critical question is whether he has alleged facts that would entitle him to more process than he received.

To answer that question, it is necessary to distinguish between dismissals that are for academic reasons and those that stem from disciplinary issues. For policy reasons, academic institutions are afforded great discretion in judging students' academic performance. *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 92 (1978). Accordingly, "when a student is discharged for academic reasons, an informal faculty evaluation is all that is required."

---

[1] Although *Goss* dealt with a suspension from a public high school, the Third Circuit has routinely applied its analysis to the university context. *See e.g.*, *Osei v. Temple Univ.*, 518 F. App'x 86, 88-89 (3d Cir. 2013).

*Hankins v. Temple Univ.*, 829 F.2d 437, 445 (3d Cir. 1987).  In contrast, disciplinary expulsions may require educational institutions to afford students more process.  *Goss*, 419 U.S. at 581.  Although Defendants contend Plaintiff's dismissal was for purely academic reasons, that conclusion is not compelled by the Complaint, which alleges he was expelled from the graduate program for violations of the Student Conduct Code.  As such, the Complaint alleges a dismissal that could plausibly be disciplinary in nature.

What process must be provided prior to a disciplinary dismissal requires "weighing (1) the private interests at stake, (2) the governmental interests at stake, and (3) the fairness and reliability of the existing procedures and the probable value, if any, of additional procedural safeguards."  *Palmer*, 868 F.2d at 95 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)); *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1240 (10th Cir. 2001).  Here the private interests at stake include Park's interest in remaining at Temple and the governmental interests include the university's interest in upholding its Code of Conduct.  A more detailed analysis is required for the third prong and reveals that Plaintiff's due process claim is highly tenuous in light of the substantial procedures he was afforded by Temple.

These procedures include an investigation, two hearings, an appeal, and a final review and decision by the Dean, which together are substantially more process than courts have required in similar circumstances.  Plaintiff points to what he asserts are numerous defects in the procedures that took place.  These include problems with notice, a denial of the assistance of counsel, inadequate pre-hearing discovery, a denial of the right to cross-examination, the use of hearsay, the denial of an opportunity to call favorable witness, and general bias on behalf of the individual Temple employees.

With respect to notice, even in the disciplinary setting, there is generally no right to advance notice of the charges so long as there is sufficient time afforded to respond. *Goss*, 419 U.S. at 582 (holding that there need not be a delay between notice and a hearing, so long as notice informs of charges and affords sufficient time to respond). In any event, the 48-hour notice Plaintiff received here is adequate. *See Osei v. Temple Univ.*, 518 F. App'x 86, 89 (3d Cir. 2013) (upholding one day notice of charges in hearing that resulted in temporary suspension where notice made identity of the witness and the subject of the charges clear, and where there was no objection).

Similarly, there is no right to the assistance of counsel, *see Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir. 1993) (concluding that in student disciplinary proceedings there is, at most, a right to consult an attorney, but not to formal representation at hearing); nor to discovery, *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 639 (6th Cir. 2005) (declining to find a due process requirement to notice of the evidence against a student in a disciplinary hearing); nor to cross-examination, *Winnick v. Manning*, 460 F.2d 545, 550 (2d Cir. 1972) (holding cross-examination in expulsion hearing is required only where testing credibility of witnesses is necessary to fairness of proceeding); *see also Johnson v. Temple Univ. of Commonwealth Sys. of Higher Educ.*, No. CIV.A. 12-515, 2013 WL 5298484, at *11 (E.D. Pa. Sept. 19, 2013) (finding that Temple's procedure requiring subject students to submit questions to the hearing officer who in turn decides whether and in what form to pose them to witnesses satisfied procedural due process). Contrary to Plaintiff's assertion, the formal rules of evidence are inapplicable in such proceedings, and so neither does the allowance of hearsay in the hearing implicate due process concerns. *Osei*, 518 F. App'x at 89 ("[T]o any extent hearsay was permitted at Osei's hearing,

the school did not have to abide by the same evidentiary standards as one would in a courtroom." (citing *Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920, 926 (6th Cir. 1988)).

As to the limited scope of appeal afforded to him, there are no cases suggesting an appeal from a disciplinary dismissal is required. *Cf. Manning v. Temple Univ.*, No. CIV.A. 03-4012, 2004 WL 3019230, at *8 (E.D. Pa. Dec. 30, 2004) (holding that no appeal is required for purely academic dismissal), *aff'd*, 157 F. App'x 509 (3d Cir. 2005). Notably, Plaintiff was afforded an opportunity to appeal and did so. And although Plaintiff claims the individually named Temple employees were all biased against him, he does not allege any relevant facts to support such an assertion. Although he claims Brown-Joseph discriminated against him based on race and his national origin in the assignment of clinical shifts, there is no allegation that she was involved in any way with the investigation, hearings or decision, and so any bias she may have had is, on the allegations made here, not relevant to the due process inquiry.

The closer issue is whether Plaintiff's allegation that he was denied the opportunity to present witnesses is sufficient to state a due process claim. Within this category, Plaintiff raises two distinct issues. The first is that "Defendants intimidated and/or dissuaded other Temple faculty from testifying on Dr. Park's behalf. Dr. Park was notified by multiple individuals that Temple's direction to program staff and named Defendants was to 'stay out' of Dr. Park's hearing." The second is that the hearing board relied on post-hearing *ex parte* testimony from four witnesses. *See Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920, 928 (6th Cir. 1988). Accepted as true, either factual allegation would be consistent with Plaintiff's having been deprived of his opportunity to be heard, which is central to procedural due process. However, both allegations lack a critical factual link: nowhere does Plaintiff allege that he actually attempted to call witnesses in his defense but was prevented from doing so by Temple or any of

the named employees. While he does allege that the 48-hour notice he received prevented him from calling witnesses because Temple policy requires students to notify Temple within 48 hours of any witnesses they intend to call, there is no allegation that he made any such attempts or requested a continuance in order to secure the presence of witnesses. Therefore, without more factual content, Plaintiff has not "nudged [his due process claim] . . . across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Finally, Plaintiff asserts, without citing to supporting authority, that even if no individual defect alleged is sufficient to state a due process claim, the combination of all of them in the overall circumstances of his case, amount to a denial of due process. The defects alleged here do not warrant such a conclusion. *Cf. Furey v. Temple*, 730 F. Supp. 2d 380, 395 (E.D. Pa. 2010) (denying Temple's summary judgment on due process claims after "considering all the claims of a due process violation as a whole," including a transcript of the disciplinary hearing showing facts from which it could be concluded panel members were biased against the student and in favor of the police officer complaining witness). Accordingly, the due process claim will be dismissed against all Defendants.[2]

### B. Fourteenth Amendment Equal Protection (Count Two)

Plaintiff also brings a Section 1983 claim for violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution against all Defendants, alleging that

---

2 To the extent that Plaintiff proceeds against the named Temple employees in their individual capacity, they assert that they are entitled to qualified immunity. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). On a motion to dismiss, the analysis proceeds in two parts, either of which may be addressed first. At issue are whether the Plaintiff has alleged facts that would establish a violation of a constitutional right, and if so, "whether that right was 'clearly established' at the time of the challenged conduct." *Dougherty v. Sch. Dist. of Philadelphia*, 772 F.3d 979, 986 (3d Cir. 2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Because no constitutional violation has been properly alleged, it is unnecessary at this juncture to reach the "clearly established" prong of the named Temple employees' qualified immunity defense.

he was subjected to disparate treatment because of his status as an Asian American and naturalized citizen.[3] "To state an equal-protection claim, Plaintiff[] must allege . . . 'intentional discrimination.'" *Hassan v. City of N.Y.*, 804 F.3d 277, 294 (3d Cir. 2015) (quoting *Washington v. Davis*, 426 U.S. 229, 241 (1976)), *as amended* (Feb. 2, 2016). To show intentional discrimination, it is necessary for a plaintiff to demonstrate he "received different treatment from that received by other individuals similarly situated." *Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009).

Here, Plaintiff's equal protection claim contains little more than bare recitals of legal elements. *Iqbal*, 556 U.S. at 686. These include Plaintiff's assertion that similarly situated individuals of a non-protected class exist and received different treatment. Moreover, the Complaint is devoid of facts that would tend to support an inference that Plaintiff's expulsion had anything to do with his status as a member of a protected class, rather than the nature of the representations he made to Temple about the reasons for the surrender of his dental licenses.

The only allegations that are at all consistent with unlawful bias are the contentions that Belinda-Brown Joseph discriminated against nonwhite, foreign-born students in the favorable assignment of clinical shifts and that she "played a large role in Dr. Park's expulsion." While Plaintiff reported Brown-Joseph's perceived favoritism to Wada, shortly before the expulsion, standing alone this is insufficient. Plaintiff does not allege specific facts regarding the involvement of this concern in his expulsion, nor is there any allegation that either Brown-Joseph or Wada communicated anything to the individuals who were involved with the disciplinary

---

[3] Plaintiff also asserts, without citation to authority, that he is a member of a protected class by virtue of his status as "a student with a previously surrendered dental license." Whether a particular class is suspect under the Equal Protection Clause hinges largely on whether the class is tied to immutable characteristics and whether the class has historically been subjected to discrimination. *Hassan*, 804 F.3d at 301. Plainly, there is no basis to conclude that Plaintiff is a member of a protected class solely by virtue of being a student with a previously surrendered dental license.

proceedings. Neither does the allegation that "Dr. Brown-Joseph told another student in the program, prior to Dr. Park's hearing, that Dr. Park would be expelled" plausibly state that Plaintiff's equal protection rights were violated. Even assuming the statement was made, it does not logically follow, as Plaintiff would have it, that "[t]he hearing was predetermined." Rather than infer from this comment the existence of a concerted group effort to expel plaintiff, the Court accepts as significantly more plausible the "obvious alternative explanation," *Twombly*, 550 U.S. at 567, that Brown-Joseph was simply expressing an opinion about what the outcome of the disciplinary proceedings would be. For these reasons, the equal protection claim will be dismissed against all Defendants.

### C. Retaliation (Count Five)

The only remaining federal claim is Count Five, which is styled as a claim for "Retaliation." Specifically, Plaintiff asserts that he was expelled in retaliation for the complaint he made to Wada about Brown-Joseph's race-based favoritism in clinical assignments.[4]

To state a retaliation claim Plaintiff must allege: 1) that he engaged in protected activity; 2) subsequent or contemporaneous adverse action taken by the Defendants; and, 3) the existence of a "causal link" between the protected activity and the adverse action. *See, e.g.*, *Andreoli v. Gates,* 482 F.3d 641, 649 (3d Cir. 2007) (defining the elements for a Title VII retaliation claim); *Whitfield v. Notre Dame Middle Sch.*, 412 F. App'x 517, 522 (3d Cir. 2011) (same elements in the Title VI retaliation context); *Miller v. Thomas Jefferson Univ. Hosp.*, 565 F. App'x 88, 91 (3d Cir. 2014) (same elements in the 42 U.S.C. § 1981 retaliation context).

---

[4] Defendants point out that Count Five fails to identify any specific legal basis for the retaliation claim. Plaintiff responds that because Count Five incorporates the rest of the Complaint by reference, Defendants are on notice that his retaliation claim is made "via the 14th Amendment and other laws regarding discrimination." Although not a model of rigorous legal work, the failure to identify the precise basis for the retaliation claim is not fatal. *See Doe ex rel. Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 557 (3d Cir. 2011) ("Title VI and 42 U.S.C. § 1981 prohibitions against discrimination are coextensive with those of the Equal Protection Clause." (citations omitted)).

Here, too, Plaintiff fails to allege facts that would show that the individuals involved in the disciplinary proceedings were aware of – much less, motivated by – Plaintiff's complaint to Wada about Brown-Joseph.  Without any facts to connect Plaintiff's complaint of race or nationality-based disparate treatment to someone actually involved in the disciplinary process that resulted in his expulsion, the Complaint fails to plausibly suggest the required causal link between the adverse action and the protected activity.  Consequently, the retaliation claim must also be dismissed.

### D.  State law claims

Given the dismissal of each of Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over the Plaintiff's breach of contract, unjust enrichment and defamation claims.  28 U.S.C. § 1367(c)(3).  Because the Court does not reach the merits of the motion to dismiss the state law claims, they too will be dismissed.

### IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss will be granted and Plaintiff's Complaint will be dismissed.  Leave will, however, be granted to amend in accordance with *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir.2004)).

An appropriate order follows.

Date:   January 24, 2017

                                              **BY THE COURT:**

                                              **/s/ Wendy Beetlestone**
                                              _____
                                              **WENDY BEETLESTONE, J.**