# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SEAN PARK | : | CIVIL ACTION |
| v. | : | |
| TEMPLE UNIVERSITY, et al. | : | No. 16-5025 |

## MEMORANDUM

**DITTER, J.**                                                                 March 20, 2018

Before me is Defendants' motion to dismiss Plaintiff's First Amended Complaint.[1] Dr. Sean Park alleges that Temple University violated his due process rights provided by 42 U.S.C. § 1983 when it expelled him from its School of Dentistry.[2] He also contends that the individual defendants defamed him. Dr. Park also brings breach of contract and unjust enrichment claims solely against Temple. For the reasons discussed, Defendants' motion will be granted.

## I.   FACTUAL AND PROCEDURAL BACKGROUND [3]

In 2013, Dr. Park voluntarily surrendered his dentistry license in California and

---

[1] On January 24, 2017, Judge Beetlestone granted Defendants' motion to dismiss Plaintiff's original complaint with leave to amend. Plaintiff subsequently filed the present First Amended Complaint reasserting Fourteenth Amendment due process claims as well as state law claims. After Defendants filed a motion to dismiss Plaintiff's First Amended Complaint, this case was transferred to my docket.

[2] Temple is a state actor for purposes of 42 U.S.C. § 1983 and therefore Plaintiff could only be expelled if he received a full hearing concerning the charges against him. *See Krynicky v. University of Pittsburgh*, 742 F.2d 94 (3d Cir. 1984).

[3] When reviewing a motion to dismiss, I must accept as true the factual allegations contained in the complaint and all reasonable inferences drawn therefrom and view the facts in the light most favorable to the plaintiff.

Texas after admitting to billing, advertising and forgery of documents. Dr. Park subsequently applied to the Graduate Specialty Program in Periodontology and Oral Implantology as well as the Masters program in Oral Biology at Temple University's Kornberg School of Dentistry ("the Program"). The application process required an application and interview with four members of Temple's staff. The Program's application requested information on professional licenses but did not inquire about the validity or current status of state professional licenses held by the applicant.[4] Dr. Park was accepted into the Program in June 2014. While enrolled in the Program, Dr. Park practiced with a training permit under supervising staff licensure.

On May 31, 2016, a patient reported to Temple that Dr. Park had lost his dental license. On June 2, 2016, Dean Amid Ismail, Dr. Leona Sperrazza, and Dr. Keisuke Wada questioned Plaintiff regarding the status of his dental licenses.[5] Dr. Park disclosed that he had surrendered his licenses to practice dentistry in California and Texas. He stated that the surrenders were based on "allegations involving billing, advertising, and forgery of documents at a dental practice for which [Dr. Park] had previously worked." *See* Am. Compl. ¶ 33. Dr. Park noted that his attorney would provide more details and was given until June 8, 2016, to provide the information. On June 6, 2016, Dr. Park's

---

[4] An active dental license is not required for participation in the Program.

[5] Amid Ismail is the Dean at Temple's School of Dentistry. Dr. Sperrazza is the Associate Dean for Patient Care at Temple's School of Dentistry. Dr. Wada was Dr. Park's Program Chair.

2

attorney provided a letter to Dean Ismail detailing the circumstances of Dr. Park's license surrender and acknowledging that by surrendering his licenses, Dr. Park had conceded that he was guilty of the charges brought against him. *See* Am. Compl. ¶ 40.

On June 15, 2016, Dr. Park received notice that Temple was charging him with a violation of the University Code of Student Conduct, Article III, Paragraph C, Section 10 which prohibits: "Providing false or misleading information, verbally or in writing, to the university or university personnel," including " . . . providing false or misleading information during a disciplinary proceeding or investigation related to potential policy violations." *See* Am. Compl. ¶ 46. The notice specified that the charge against Dr. Park was "Failure to inform the Kornberg School of Dentistry of the voluntary surrender of [Dr. Park's] license to practice dentistry by the California Board of Dentistry." *Id.* at ¶ 48.

The Due Process Clause of the Fourteenth Amendment of the United States Constitution protects against state deprivations of life, liberty, or property without due process of law. As a graduate student at Temple, a public university, Dr. Park had a property interest in his continued education and enrollment. *See Palmer ex rel. Palmer v. Merluzzi*, 868 F.2d 90, 95 (3d Cir. 1989) (citing *Goss v. Lopez*, 419 U.S. 565 (1975)).

In evaluating Dr. Park's claims, due process requires weighing: "(1) the private interests at stake, (2) the governmental interests at stake, and (3) the fairness and reliability of the existing procedures and the probable value, if any, of additional

3

procedural safeguards." *Palmer*, 868 F.2d at 95 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). It is quite obvious that Dr. Park had an interest in remaining as a student at Temple and equally obvious that Temple had an interest in maintaining its standards of conduct. The pivotal question then is whether Dr. Park had a fair hearing as due process requires.

Temple has an established procedure when a student has been charged with violating the University Code of Student Conduct.[6] To explain this procedure, I have turned to the Amended Complaint, an exhibit attached to it, the plaintiff's brief opposing the motion to dismiss, and a uncontroverted exhibit provided by the defendants.

When a violation has been charged, the matter is heard by a then-appointed panel called the Honor Board. The Board may make findings and a recommendation to the dean. A review of the Board's action may be taken to what is called the Appeal Review Committee. Based on all that he has before him, the dean makes a decision concerning

---

[6] Temple's Code of Student Conduct provides the following guideline for disciplinary procedures which comports with the requirements of due process:

> The student is provided a notice of the charges against him and a copy of the basis of those charges. The student is given the opportunity to be heard by disciplinary committee members. For serious cases, the University holds a full panel hearing, where the student can hear the testimony against him, testify, and present witnesses and evidence.

*Johnson v. Temple University - of the Commonwealth System of Higher Educ.,* 2013 WL 5298484, at *9 (E.D. Pa. Sept. 19, 2013) (quoting *Furey v. Temple University*, 884 F.Supp.2d 223, 258-59 (E.D. Pa. 2012)). Temple's Honor Board procedure is the way it puts into practice the provisions of the Code of Conduct.

the student. As will be shown, that was the procedure that was followed here.

At an Honor Board hearing held on June 23, 2016, to consider the charge that Dr. Park had provided false or misleading information on June 2, Dr. Sperrazza, the Associate Dean for Patient Care, testified on behalf of Temple and Dr. Park presented two witnesses. At the end of the hearing, the Honor Board concluded by majority vote that Park had "more than likely violated the honor code." Dr. Park was told that the Board would discuss a recommended penalty, relay that recommendation to the Dean and that Dr. Park would be contacted. The Honor Board ultimately recommended a sanction of "probation through graduation." Dr. Park was not informed of the Honor Board's decision.

Instead, on June 26, 2016, Dr. Park received notice of a second Honor Board hearing. The notice asserted the same violation of the Conduct Code, providing false or misleading information to the university or university personnel; however, the "specification of the charges" provided was more detailed. Specifically, the notice stated that the hearing was being convened to address:

> Failure to fully and accurately disclose, under direct questioning by the Dean and Associate Dean for Patient Care [Dr. Sperrazza] during a formal investigation of a possible violation of the School of Dentistry's Honor Code, the specific charges brought against the resident by the Dental Board of California and the Texas Board of Dental Examiners, namely that the resident failed to disclose the below information while stating that the disciplinary charges against his California dental license related solely to billing errors committed by his

5

employers. . ."[7]

*See* Am. Compl. ¶ 57. The second hearing was held on July 1, 2016, before predominantly the same panel who had participated in the first hearing.[8] Dr. Sperrazza testified once again, but Dr. Park did not present any witnesses. By majority vote, the Honor Board found that Dr. Park had violated the Code of Student Conduct and recommended to Dean Ismail that Dr. Park be expelled from the Program. *See* Am. Compl. ¶¶ 64, 119. Dr. Park was notified of this decision.

On July 11, 2016, Dr. Park appealed the decision of the Board to the Appeal Review Committee arguing that there was new evidence and procedural flaws in the hearing process. On August 12, 2016, Dr. Park received notice that the Appeal Review Committee had unanimously decided to uphold the Honor Board's findings. Thus, his appeal was denied. *See* Am. Compl. ¶ 101.

Having considered this information, Dean Ismail decided that Park should be expelled from the Program and he was expelled.

Within the school setting, there are two types of dismissals – for disciplinary purposes and for academic reasons. There is a significant difference in the procedural

---

[7] Defendants point out that, in his Amended Complaint, Dr. Park omitted the three (3) detailed subsections to the charge set forth in Dr. Park's notice which provided extensive detail on the basis for the hearing. *See* Defs.' Mot. to Dismiss at 5, n.3.

[8] Defendants contend that the second Honor Code hearing was not the same at the July 1, 2016, hearing because one of the student-resident panel members was different. *See* Defs,' Mot. to Dismiss at 7, n.6.

safeguards required when a student has violated valid rules of conduct versus a student who has failed to meet academic standards. *Bd of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 87-90 (1978). A judgment on academic grounds is by its nature more subjective and evaluative than the typical factual questions presented in the average disciplinary decision. *Id.* As a result, the procedural requirements for academic dismissal are far less stringent than the requirements for the fact-finding proceedings traditionally required in a disciplinary proceeding.[9] *Id.*

I agree with Judge Beetlestone's previous thought that Dr. Park's dismissal was disciplinary in nature. The charges and hearings held in this case addressed Dr. Park's failure to disclose relevant information on his application and, upon further inquiry, to Temple's faculty. The Complaint alleges that Dr. Park was expelled for violations of the Student Conduct Code. There was no discussion of his clinical work or school grades. As a result, I conclude that Dr. Park was expelled on disciplinary grounds and will apply the more rigorous standard of review.

---

[9] As the Supreme Court noted:

> Misconduct is a very different matter from failure to attain a standard of excellence in studies. A determination as to the fact involves investigation of a quite different kind. A public hearing may be regarded as helpful to the ascertainment of misconduct and useless or harmful in finding out the truth as to scholarship.

*Bd of Curators of Univ. of Mo.*, 435 U.S. at 87 (citing *Barnard v. Inhabitants of Shelburne*, 102 N.E. 1095, 1097 (Mass. 1913)).

## II. DISCUSSION

Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted. Federal Rule of Civil Procedure 8(a)(2) only requires "a short and plain statement of the claim showing that the pleader is entitled to relief;" however, the Supreme Court has stated that there must be "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

If Temple provided Dr. Park with due process, he has not stated a claim for which I can afford him relief and his First Amended Complaint must therefore be dismissed.

### A. Fourteenth Amendment Due Process

Dr. Park asserts a § 1983 claim against Defendants arguing that they failed to provide him with required due process protections in his Honor Board hearings and appeal.

As will be shown, Dr. Park contends that each of the steps that ultimately culminated with his expulsion was in and of itself unfair and a denial of due process. It must be kept in mind, however, in assessing those steps, that all that took place involved what Dr. Park himself had said he had done or what he admitted he had failed to do. None of the steps dealt with accusations from someone else – accusations that could be disputed, questioned, explained, or minimized.

It is in this light that the various steps that follow must be examined.

In assessing the fairness of the hearing process, Defendants characterize the hearings as two distinct, but related hearings. The first addressing whether Dr. Park failed to inform Temple of his license suspension on his application, and the second addressing whether he provided false and misleading information to Temple during the June 2nd meeting. *See* Am. Compl. ¶¶ 48, 57, 139.

Dr. Park conflates the issues from both hearings arguing that because defendants failed to achieve the desired results from the first Honor Board hearing, they simply held another hearing to achieve their goal – Dr. Park's expulsion. He contends that the Honor Board at the first hearing had before them all of the purported evidence that Defendants later claimed formed the basis for a "new and different" claim to be considered at the second hearing. *See* Am. Compl. ¶ 142. Whether the hearings are considered as two related hearings, or one, makes little difference – both provided the requirements of due process.

Dr. Park sets forth the following claims of due process violations.

### 1. Investigation

Dr. Park first takes issue with the "investigation" or questioning conducted by Dean Ismail, Dean Sperrazza, and Dr. Wada on June 2, 2016. Dr. Park was questioned for approximately 15 minutes regarding his graduate residency certificate and the status of his previous dental licenses. *See* Am. Compl. ¶¶ 32, 36. He contends that the questioning was unannounced, hurried and fundamentally unfair. Dr. Park notes that he

was not notified at the time that disciplinary charges were being considered against him and objects to Defendants characterization of this meeting as a "formal investigation." *See* Am. Compl. ¶¶ 32, 35, 57, 60. But what was he asked about that he did not have readily in mind? Hurried? What further explanation was denied because the questioning was hurried? As previously noted, Dr. Park did have the time and presence of mind to cast blame for his misdeeds on the dental practice where he once worked.

There is no requirement that a state actor such as Temple provide notice of an investigation. For example, if Temple had requested information from California and Texas about Dr. Park's licenses, its failure to notify Dr. Park that it was doing so would not have been a denial of due process. The questions asked by Dean Ismail, Dean Sperrazza and Dr. Wada were in the same category – simply the first step in a fact-finding process. Due process is not a game of blind-man's bluff but one that starts with all possible certainty of the events.

The investigation of June 2, 2016, was an essential due process step and not a denial of due process.

### 2. Notice to First and Second Hearings

As previously noted, there were two Honor Board hearings, the first on June 23, 2016, and the second on July 1, 2016.

Dr. Park argues that the notice for his first hearing led him to believe that the June

23, 2016, hearing would focus on his eligibility for the dental program at Temple.[10] He also alleges that he was not adequately advised that the hearing would address his discussion with school administrators on June 2 and the alleged inconsistencies revealed by his lawyer's subsequent letter to the administrators. The notice specified that the hearing would address Dr. Park's "Failure to inform the Kornberg School of Dentistry of the voluntary surrender of your license to practice dentistry by the California Board of Dentistry." *See* Am. Compl. ¶ 48.

In other words, Dr. Park believed that the June 23 hearing would deal with his eligibility for the Program for which he had been accepted two years before. Or saying it another way, he believed the hearing would concern how he had misled the four members of Temple's staff who interviewed him prior to his admission to the Program. In short, Dr. Park believed the hearing would address matters with which he was thoroughly familiar, be their effect two years before or at the interview with Dean Ismail, Dean Sperrazza, and Dr. Wada on June 2, some 13 days before. All of which leads to the inevitable conclusion that however he understood the hearing notice, he cannot claim he was unprepared.

Dr. Park was not denied due process by his mistaken belief as to what the June 23

---

[10] In addressing the issue of notice, the Supreme Court has stated that a student must be given "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Goss*, 419 U.S. at 581. The Court also determined that "[t]here need be no delay between the time 'notice' is given and the time of the hearing . . . We hold only that . . . the student first be told what he is accused of doing and what the basis of the accusation is." *Id.* at 582.

hearing would entail, by what actually did take place, the Board's conclusion that he had probably violated the Code of Conduct, and the recommendation of probation.

Dr. Park also contends that the notice for his second hearing, set for July 1, was inadequate because he had never been advised of the outcome of his first hearing and he believed that the second hearing was a continuation of the same proceeding. This belief may have been based at least in part upon the fact that the notice cites the same Code of Conduct section cited in the first notice. He argues that he had no notice that Temple had initiated an entirely new disciplinary hearing. However, the notices of the two hearings differed: the first that he failed to inform Temple of his license suspensions and the second, that he lied by putting the blame on his employers.

Dr. Park's contention is without merit. Notice of the second hearing plainly said that the Honor Board was going to consider a matter not considered at the first hearing. While it may be unfortunate that in advance of the hearing Dr. Park thought its purpose was just to throw more coal on the fire, he was not prejudiced by his lack of understanding. Again, the hearing dealt with a matter fresh in mind and of his own doing. There was no denial of due process.

Dr. Park also claims that he was disadvantaged by the fact that he was not told of the Board's recommendation of probation before the second hearing, but he does not specify how that lack of knowledge for the eight days between the first and second hearings caused him prejudice. What could he have done with the information? How

would it have changed whatever he planned to say or do at the second hearing?

Moreover, during his first hearing, the Honor Board advised Dr. Park that they had found that Dr. Park "more than likely" violated the honor code.[11] That he was not told of the Board's recommendation before the second hearing fails to rise to the level of a due process violation.

### 3. Hearing Panel Members were Biased and Overly Confrontational

Dr. Park argues that Temple's decision to appoint the same school personnel to both the first and second Honor Board panels created actual bias. In support thereof, he points out that panel members had already heard essentially all of the evidence against Dr. Park and had already entered judgment on the merits of his case. *See* Am. Compl. ¶¶ 88, 138, 142-144.

In the first place, there had been no decision, much less a judgment – only a finding of probability and a favorable recommendation.

It is hard to see why the repeat members of the Honor Board would embark on the second hearing biased against Dr. Park. Just the opposite would appear to be true. Having leaned toward leniency only a few days before, they might still be expected to be sympathetic. In any event, merely because they had been members of the Honor Board at

---

[11] One page of the transcript from Dr. Park's first hearing is attached to Defendants' motion to dismiss. Dr. Park responded to clarify the matter by providing portions of his June 23, 2016 hearing transcript. *See Fallon v. Mercy Catholic Medical Center of Southeastern Pennsylvania*, 877 F.3d 487, 493 (3d Cir. 2017) (a court may consider a document that is "integral to or explicitly relied upon" in the complaint).

the first hearing does not suggest, much less prove bias.

Dr. Park also contends that the panel members were unnecessarily confrontational creating an adversarial tone to the proceedings.

As an initial matter, Dr. Park fails to allege in his Amended Complaint that Board members were confrontational during his hearings. Consequently, this portion of his argument could be summarily dismissed. Nonetheless, I shall briefly discuss it.

A due process hearing is not a miniature trial with judge and jury. Rather, members of the panel play all the parts including asking sharp questions and persisting that they be answered. Confrontational? Of course. It is also true that during a trial that sometimes lawyers and even judges may be aggressive.

That members of the Honor Board appeared to Dr. Park to be too confrontational did not deny him due process.

### 4. *Res Judicata*

Dr. Park argues that the principles of *res judicata* bar Defendants from enforcing the recommendation of the second Honor Board panel. "*Res judicata* bars a claim litigated between the same parties . . . in earlier litigation where the claim arises from the same set of facts as a claim adjudicated on the merits in the earlier litigation." *Blunt v. Lower Merion School Dist.,* 767 F.3d 247, 277 (3d Cir. 2014). Essentially, Dr. Park contends that allowing the second Honor Board's panel recommendation to stand gives Defendants the opportunity to accomplish what failed to occur in the first hearing – Dr.

14

Park's expulsion from the Program. Analysis of this issue turns on whether or not the same "cause of action" was at issue in both hearings.

Plaintiff has provided no precedent or cogent reason for the argument that *res judicata* applies to the proceedings here. *See Doe v. The Rector and Visitors of George Mason Univ.*, 179 F. Supp.3d 583, 590 (E.D. Va. 2016). In any event, as previously discussed, the charges and facts at issue in the two hearings were sufficiently distinct. As a result, the same "cause of action" was not at issue at both hearings and *res judicata* would not apply.

III. **CONCLUSION**

In summary, Temple provided Dr. Park with all the notice safeguards necessary for full and fair hearings. Dr. Park was given notice of the charges against him and hearing dates. During his hearings, Dr. Park had the right to counsel and heard the testimony against him. He also had the right to testify and present witnesses and evidence. He had the right to appeal to another panel.

At each step of the process, Dr. Park was given the process that was due him. Based on all that had taken place, Dean Ismail made the ultimate decision to expel Dr. Park. Because Dr. Park's hearings complied with due process, Dr. Park's challenge to Dean Ismail's decision fails. The First Amended Complaint must be dismissed. Allowing another complaint would be futile.

Because I am dismissing Dr. Park's federal claims, I will not consider the state

claims of breach of contract, unjust enrichment, and defamation.

An appropriate order follows.