## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SEAN PARK** | **: CIVIL ACTION** |
| | : |
| **v.** | **: NO. 16-5025** |
| | : |
| **TEMPLE UNIVERSITY, _et al._** | : |

## MEMORANDUM

**KEARNEY, J.**                                                                  **April 25, 2019**

Temple University's Kornberg School of Dentistry admitted a dentist to its graduate program in periodontology. He attended classes and provided dentistry services at clinics as part of the graduate curriculum. His application for admission did not disclose surrendering his dental license in California after authorities discovered he forged a certificate of residency at a school he never attended. After it admitted him, Temple discovered the surrendered dental license. Temple Dental School's administration asked the dentist to explain the circumstances surrounding his surrendered license. Temple's Dental School dean believed the dentist did not truthfully respond. A panel of selected members of Temple's Honor Board held a disciplinary hearing examining the admission packet and, after hearing witnesses, recommended placing the dentist on probation through graduation. The Dental School dean then asked a slightly different hearing panel of the Honor Board to examine the truthfulness of the dentist's responses to Temple's questions during its investigation. After hearing witnesses, the Honor Board's second panel recommended expelling the dentist from the graduate program. The dentist attended both hearings. The hearing panel allowed him to present witnesses and question Temple's witnesses. Consistent with the hearing panel's recommendation after the second hearing, the Dental School dean expelled the dentist from the graduate program.

The dentist sued Temple, the Dental School dean and an associate dean for depriving him of procedural due process in the second Honor Board hearing leading to the dean's decision to expel him. He claims the dean held a bias against "forgers" which led him to manipulate the process to convene a second hearing which led to the expulsion. He also brings claims of breach of contract, unjust enrichment and defamation. The dentist fails to tie his suspicions of the dean's bias against forgers into manipulating the disciplinary process to ensure his expulsion. He fails to adduce evidence of conduct depriving him of procedural due process in the Honor Board's hearings. He fails to adduce evidence of a contract or a legal basis for unjust enrichment or defamation claims. As there are no genuine issues of material fact, we grant summary judgment in favor of Temple University, the Dental School dean and an associate dean.

## I.    Undisputed facts.[1]

Sean Park, DDS sued Temple University and two administrators of its Kornberg School of Dentistry, Dean Amid Ismail and Associate Dean Leona Sperrazza (collectively "Temple Defendants"), after Temple expelled him from a graduate program in periodontology in 2016.[2] He alleges the Temple Defendants violated his right to procedural due process and alleges violations of Pennsylvania common law.

### *Dr. Park's licensing issues in California and Texas.*

Dr. Park obtained his Doctor of Dental Surgery in 2005 from the University of Michigan.[3] Dr. Park completed a general practice residency in California in June 2006 and received his California dental license in November 2006.[4]

In July 2012, the Dental Board of California accused Dr. Park of creating a fraudulent Certificate of Residency in Oral and Maxillofacial Surgery from the University of Southern California.[5] The California Dental Board contended Dr. Park never attended or completed a

2

residency program in oral and maxillofacial surgery at the University of Southern California, created a fraudulent certificate showing he completed his specialty training at the University of Southern California, and submitted the fraudulent certificate to insurance companies to become a network specialist provider.[6] The Dental Board of California accused Dr. Park of unprofessional conduct; deceptive or misleading advertising; advertising violations; making a fraudulent certificate; and conduct warranting the denial of a license.[7] In May 2013, Dr. Park signed a stipulation with the California Dental Board admitting to the charges in the Board's accusation and agreeing to surrender his dental license in California.[8]

In 2013, Dr. Park applied for a dental license in Texas. On July 24, 2013, the Texas State Board of Dental Examiners opened an investigation into Dr. Park's application after learning of his surrendered license from the California Dental Board.[9] In response to the investigation, Dr. Park admitted submitting a dental license application in Texas "with false information."[10] On November 7, 2014, the Texas State Board of Dental Examiners advised Dr. Park it completed its investigation and "determined that sufficient facts exist to justify disciplinary action against your license" and "confirmed that you submitted a forged document to the Board as a portion of your application for dental licensure."[11] On November 28, 2014, Dr. Park voluntarily surrendered his Texas dental license.[12]

### Dr. Park's 2014 admission to Temple's School of Dentistry and its Honor Code.

On June 6, 2014, with an ongoing investigation into his license in Texas, Dr. Park applied to a graduate program in periodontology at Temple's Kornberg School of Dentistry.[13] Dr. Park admittedly did not disclose the surrender of his California dental license in his Temple application. He excuses his nondisclosure arguing Temple's application did not ask whether he had a license

3

or lost a license, or ask any other questions requiring him to disclose licensing information, and nothing required him to have an active license or be free of discipline on an previous license.[14]

Temple accepted Dr. Park into its graduate program on June 17, 2014, and he began the program in July 2014.[15] As part of the admission process, Dr. Park completed an "Application for Notification and Approval of Post-Graduate Training/Faculty Member Status."[16] A question on the form asked the applicant to "list all states, territories or countries where you hold a license to practice dentistry (active or inactive, current or expired)."[17] Dr. Park listed Texas and California. The Temple Defendants characterize Dr. Park's responses as "lies" violating not only Temple's Honor Code, but Pennsylvania law.[18] Dr. Park denies his responses are misrepresentations because the application asked to "list all licenses ever held regarding of status"; "[i]t did not ask to indicate the status," and "it was his impression that his license fell under inactive and he provided the licenses to be transparent."[19]

All students in Temple's Dental School are required to comply with its Honor Code.[20] Dr. Park signed an "Honor Code Agreement" on June 24, 2014 acknowledging he read and understood the Honor Code and agreed "to abide by its principles throughout the entire duration of [his] schooling" at Temple's Dental School.[21] The Dental School's Honor Code requires its students to abide by Temple University's Student Conduct Code.[22]

### *A clinic patient discovers Dr. Park's California disciplinary history and alerts Temple's Dental School.*

On May 30, 2016, a Temple clinic patient discovered, through an online search, Dr. Park's California disciplinary history and contacted Temple Dental School's Associate Dean for Patient Care, Dr. Leona Sperrazza.[23] On June 2, 2016, Temple Dental School's Dean Ismail, Dr. Sperrazza, and Program Director Dr. Keisuke Wada met with Dr. Park to discuss the California suspension.[24]

4

At the June 2, 2016 meeting, Dean Ismail asked Dr. Park to explain the circumstances of his surrendered California license.[25] Dr. Park explained "there were falsified documents, insurance billing errors and problems and, in the end, I surrendered my license. And by surrendering my license, I accepted all the charges made against me."[26] Dr. Park volunteered to "have [his] attorney who handles the case draft a letter explaining circumstances [sic]."[27] Dr. Sperrazza's version of Dr. Park's proffered explanation is he blamed his employer who "had without his knowledge submitted credentials representing him to numerous insurance companies as a specialist in oral maxillofacial surgery so that they could bill under specialists fees" and "[a]t no time during the meeting with Dr. Park on June 2nd did he take any responsibility for his wrongdoing."[28]

Later on June 2, 2016, Dean Ismail sent Dr. Park an email memorializing their meeting "to review some information that we have discovered regarding your licenses to practice dentistry in California and Texas" and to confirm Dr. Park "agreed to provide us documentation by June 8th, 2016, on the circumstances that led you to surrender your licenses in both states and an official copy of your General Practice Residency Certificate."[29] Dean Ismail additionally advised Dr. Park of his decision to suspend Dr. Park from "all clinical access" at Temple Dental School "due to the uncertainty about your case."[30]

### Dean Ismail refers Dr. Park to Temple's Honor Board.

In an undated letter, but presumably at Dr. Park's request after the June 2, 2016 meeting, Dr. Park's counsel sent a letter to Dean Ismail.[31] The letter explained the California Dental Board's accusation Dr. Park "committed unprofessional conduct, fraud, deceptive or misleading advertising, and advertising violations … primarily based on advertising materials and inaccurate certifications that were provided to various insurance companies holding Mr. Park [sic] out as an Oral/Maxillofacial surgeon."[32] The letter confirmed "Mr. Park [sic] signed a stipulated surrender

5

of his license ... admit[ing] the truth of the accusation and surrendered all of Mr. Park's rights and privileges as a dentist in California."[33]

After receiving the letter from Dr. Park's California counsel, Dean Ismail emailed Dr. Park on June 7, 2016. Dean Ismail told Dr. Park his attorney's letter is "vague on your responsibility in the issue in which you were charged"; "[t]he letter stated that you have elected to surrender your license before the hearing"; and "[b]ased upon the letter you appear to have admitted acceptance of accusations made by the Dental Board of California."[34] Dean Ismail also advised Dr. Park of his attempt to confirm Dr. Park's general practice residency certificate and asked Dr. Park to provide him with a letter from the residency program confirming completion.[35]

The next day, June 8, 2016, Dean Ismail emailed Dr. Park advising "[t]his case must be reviewed by our school Honor Board because you have willingly admitted to the serious charges of the California Board of Dentistry, yet failed to inform this dental school to decide on how to manage you as a resident and what safeguards should have been placed to protect patients and the school."[36] Dean Ismail advised Dr. Park his "clinical privileges will remain suspended until an Honor Board advise [sic] me of sanctions. The process is based on our the [sic] school Honor Code policy."[37]

### *Temple Honor Board's June 23, 2016 hearing.*

Temple's Honor Board is the official hearing body of the Dental School's Honor Code.[38] The Honor Board is comprised of twelve pre-doctoral students, four post-graduate residents, and twelve faculty members.[39] An Honor Board Panel is composed of a minimum of three faculty and two students from among the Honor Board members as selected by the Honor Code Administrator in consultation with "the dean," here, Dean Ismail.[40]

6

The Honor Code Administrator reviews all allegations of an Honor Code violation. If the Honor Code Administrator determines there are sufficient grounds for the allegation, a Hearing Panel is assembled. The student charged with an Honor Code violation is given notice of the charges and assigned an Honor Board hearing.[41] A student charged with an Honor Code violation is expected to attend the hearing, has the right to bring an "advisor" who may be an attorney, prepare a defense, present witnesses and evidence, and cross-examine any witness.[42] A student may challenge the membership of the Hearing Panel for "good cause" which the Honor Code Administrator may accept or reject as she deems appropriate.[43] The Dental School has the burden to substantiate the charges brought against a student by establishing each charge "by a reasonable preponderance of the evidence available at the time of the hearing."[44]

After hearing the evidence and testimony presented, the Hearing Panel determines whether there is a violation of the Honor Code and recommends "appropriate sanctions to the dean."[45] The Dean "shall modify or accept the sanction, and notify the Code Administrator who will advise the Accused Student in writing of the decision, the sanctions imposed, and instructions regarding appeals."[46]

On June 15, 2016, the Dental School's Honor Board provided Dr. Park with Notice of Disciplinary Action advising him of charges against him and a scheduled hearing date.[47] The Hearing Board advised Dr. Park his "[f]ailure to inform the [Dental School] of the voluntary surrender of [his] license to practice dentistry by the California Board of Dentistry" violated Temple's Student Code of Conduct prohibiting the provision of "*false or misleading information, verbally or in writing to the university or university personnel*. This includes, but is not limited to: a. Forgery, fraud (including payroll fraud), bribery, alternation, or misuse of university documents, records; b. Providing false or misleading information during a disciplinary proceeding

7

or investigation related to potential policy violations; or c. Representing oneself as another member of the university community."[48]

The Hearing Panel comprised of the Chairman of the Honor Board, two residents, and two faculty members held a hearing on June 23, 2016.[49] After hearing evidence, the Hearing Panel made its finding on the record, in the presence of Dr. Park, concluding "it is more than likely that you violated, by a majority vote, that you violated the honor code at Temple University or the code of Section 10 or 10 Section B. What happens from here is we will then discuss a penalty, potential penalty and that will be relayed to the Dean ..."[50]

The Hearing Panel dismissed Dr. Park from the hearing and then deliberated on the appropriate sanction, concluding "it was found that a majority vote of three to two that Dr. Park was more than likely violated [sic] the honor code, 10 Section B. And the sanctions that were decided on, again by a majority vote which was four to one, was probation through graduation. And if he has any violation of his probation, he will be expelled from the school."[51]

### *Dean Ismail reviews the Hearing Panel's June 23, 2016 decision and convenes a second hearing.*

Dean Ismail reviewed the Hearing Panel's June 23, 2016 recommended probation sanction. The parties dispute nearly everything happening next but agree on two facts: (1) Dean Ismail did not accept the probation sanction recommended by the June 23, 2016 Hearing Panel; and (2) Dean Ismail convened a second Honor Board hearing.

Dr. Ismail contends after reviewing the June 23, 2016 Hearing Panel, he determined the "record concerning Dr. Park's conduct was incomplete" because, while the Panel addressed Dr. Park's failure to disclose his licensing issues in his application to the Dental School, it failed to address Dr. Park's alleged "misstatements" made to Dean Ismail, Dr. Sperrazza, and Dr. Wada at their June 2, 2016 meeting.[52] After conferring with counsel, Dr. Ismail concluded Temple could—

8

under the Honor Code—convene a second hearing on charges relating to Dr. Park's alleged misstatements at the June 2, 2016 meeting not addressed in the June 23, 2016 hearing, allowing Dr. Park to "explain the incomplete and/or inaccurate explanations he provided at the June 2, 2016, meeting."[53]

Dr. Park contends his statements at the June 2, 2016 meeting were covered in the first hearing and his statements made at the June 2, 2016 meeting do not constitute a basis for a "second set of charges" because those statements are encompassed in the June 23, 2016 hearing, and Dean Ismail's failure to advise him of the June 23 Hearing Panel's decision and recommended probation sanction contradicts "Temple rules."[54]

On June 28, 2016, the Dental School's Honor Board provided Dr. Park with a second Notice of Disciplinary Action advising him of charges based on the same Student Conduct Code violation (Article III, Section C.10) proscribing the "provi[sion] [of] false or misleading information, verbally or in writing, to the university or university personnel ... includ[ing], but is not limited to: b. providing false or misleading information during a disciplinary proceedings or investigation related to potential policy violations."[55]  The June 28, 2016 Notice set a hearing date of July 1, 2016.

The second Notice of Disciplinary Action, however, provided a more fulsome "specification of the charges" than the earlier Notice.[56]  The June 28, 2016 Notice specified the charges as:

Failure to fully and accurately disclose, under direct questioning by the Dean and Associate Dean for Patient Care during a formal investigation of a possible violation of the School of Dentistry's Honor Code, the specific charges brought against the resident by the Dental Board of California and the Texas Board of Dental Examiners, namely that the resident failed to disclose the below information while stating that the disciplinary charges against his California dental license related solely to billing errors committed by his employers:

9

1) that complaints brought by the Dental Board of California against [r]esident included that he had *"created or caused to be created a fraudulent Certificate of Residency in Oral and Maxillofacial Surgery [which he claimed was] issued to him by the by the* [sic] *University of Southern California;"* that the resident submitted this fraudulent certificate and falsely claimed to be Board Certified in oral surgery to gain employment and practice as an oral surgeon; that the resident's fraudulent professional credentials continued in false representations submitted to multiple insurance companies; and that his fraudulent credentials led to false advertising aimed at the general public ...;

2) that the resident signed an agreement with the Dental Board of California in surrendering his license to practice dentistry stipulating that he *"admits the truth of each and every charge and allegation"* brought against him by the Dental Board of California, including that he *"created or caused to be created the fraudulent Certificate of Residency in Oral and Maxillofacial Surgery [which he claimed was] issued to him by the University of Sothern California"* and that "he falsely stated that he was ... Board Certified in the specialty of oral surgery" ...; and

3) that the resident was charged by the Texas Board of Dental Examiners with having *"engaged in unprofessional conduct by submitting a forged document to the Board as a portion of the [resident's] initial application for dental licensure. Specifically, the [resident] submitted a forged oral and maxillofacial surgery residency certificate from the University of California to the [Texas] Board [of Dental Examiners] in his initial application for dental licensure in Texas."* ...[57]

### *Temple Honor Board's July 1, 2016 hearing, Dean Ismail's decision to expel Dr. Park, and Dr. Park's appeal under Honor Code procedure.*

The Hearing Panel comprised of the Chairman of the Honor Board, two residents, and two faculty members held a hearing on July 1, 2016.[58] All but one of the panel members were the same as the members on the June 23 panel. Dr. Park attended the July 1, 2016 hearing and answered questions from the panel members.

After hearing evidence, the Hearing Panel made its finding on the record, in the presence of Dr. Park, concluding it "found that you were more than likely committed [sic] and violating the code [sic]. And as in this it was an actual, it was a unanimous decision, so again, we will discuss the sanctions, and relay our decisions and suggestions to the dean. The dean will ... Someone in the dean's office, including associate deans, would be in touch with you."[59]

The Hearing Panel dismissed Dr. Park and then deliberated on the appropriate sanction, concluding "[t]he decision for the sanction was a majority rule of expulsion. Four to one. Expulsion. The other decision more than likely committed the code [sic], was unanimous. Violated the code."[60]

The same day, July 1, 2016, Dean Ismail emailed a letter to Dr. Park. Dean Ismail advised Dr. Park he received the Honor Board's findings in its two hearings on charges Dr. Park violated the Student Conduct Code at Article III, Section C.10.[61] Dean Ismail identified the Board's findings as two charges:

**Charge 1.** In the Honor Board hearing on June 23, 2016, that you violated the Temple University Student Code of Conduct by failing to inform the [Dental School] of the surrender of your license to practice dentistry from the California Board of Dentistry as a settlement of disciplinary charges, the Board found you responsible for violating the Student Conduct Board [sic] by a majority vote.

**Charge 2.** In the Honor Board hearing on July 1, 2016, that you violated the Temple University Student Conduct Code during a meeting with the Dean and Associate Dean of Patient Care on June 2, 2016, when you failed to fully disclose the circumstances of your voluntary surrender of your license to practice dentistry from the California Board of Dentistry, the Board found you responsible for violation the Student Conduct Board [sic] by a unanimous vote.[62]

Dean Ismail advised Dr. Park he received and reviewed the Honor Board's recommended sanctions for each charge and concluded the sanction to be imposed on each charge is expulsion from the Dental School.[63] Dean Ismail additionally advised Dr. Park of his appeal rights.[64]

Dr. Park's attorney internally appealed the July 1, 2016 decision, objecting to an "inherent bias" of the "hearing officers"; a procedurally unfair hearing; and, evidence not properly considered.[65]

The Honor Code provides for an appeal process to the Dean of the Dental School, here Dean Ismail.[66] An appeal "shall be limited to a review of the record of the Honor Board hearing and supporting documents for one or both of the following purposes: a. To determine whether

11

there were procedural defects that substantially prevented the Accused Student from obtaining a full and fair hearing on the merits; b. To consider the availability of new evidence sufficient to alter the decision."[67]

The Dean "will review the hearing record and evidence and consult with University Counsel." If the Dean upholds the appeal, he may take the following action: "a. If there were procedural defects that substantially prevented the student from obtaining a full and fair hearing, the dean will return the case for a new hearing before a new Honor Board; b. If new information sufficient to alter the decision was not known to the person appealing at the time of the original hearing, the dean will return the case for a new hearing before a new Honor Board."[68]

The Dean may also "designate a Review Committee to evaluate the decision based on the record of the hearing, and provide the dean with a recommended decision."[69] If so designated, a Review Committee "shall identify a chairperson who will notify the dean of its recommendation. The dean will notify the Honor Code Administrator of [his] decision regarding the appeal and the Honor Code Administrator will notify the student."[70] After the Dean conveys his decision in writing to the Honor Code Administrator, "there shall be no further appeals."[71]

Dean Ismail designated a Review Committee consisting of four members who were not members of either Hearing Panel.[72] The Review Committee met on August 4, 2016 and issued a report addressing (a) whether procedural defects substantially prevented Dr. Park from obtaining a full and fair hearing on the merits; and (b) the availability of new evidence sufficient to alter the decision. After reviewing both questions, the Review Committee unanimously upheld the Honor Board's findings and recommendations and Dean Ismail's decision to expel Dr. Park.[73]

On August 12, 2016, Dean Ismail advised Dr. Park of the Review Committee's findings on appeal.[74] Dean Ismail offered to alter the expulsion sanction: while Dr. Park would lose "all

clinical, didactic or other privileges related to the Graduate Program in Periodontology and Oral Implantology certificate program, and … [be] ineligible to complete the certificate program in Periodontology and Oral Implantology" and without access to the Dental School and its patients, Dr. Park would be allowed to complete a Master of Science degree in the Oral Biology program by "conducting a major systematic review on a clinical question to be approved by a thesis committee."[75]

### *Dr. Park sues Temple University, Dean Ismail, and Dr. Sperrazza.*

Dr. Park rejected Dean Ismail's offer. He sued Temple, Dean Ismail, and Dr. Sperrazza. Dr. Park alleged a variety of constitutionally infirm procedural processes in the two hearings including a "biased tribunal" and Dean Ismail's decision to convene a second hearing "on the same charge and with the same core evidence" so as "to obtain the result [Dean] Ismail wanted – the expulsion of Dr. Park."[76] Dr. Park alleged three state law claims: breach of contract and unjust enrichment against Temple and defamation against all defendants.

The Defendants moved to dismiss all claims in the amended complaint under Federal Rule of Civil Procedure 12(b)(6) and, before a ruling on the motion to dismiss, moved for summary judgment.[77] Judge Ditter granted the motion to dismiss and, having granted the motion, denied Temple's motion for summary judgment as moot.[78] Judge Ditter dismissed Dr. Park's Section 1983 claim finding, *inter alia*, the decision to appoint the same members to the hearing panels did not create actual bias; the panel members were not "too confrontational" and did not deny him due process; and, rejected Dr. Park's argument *res judicata* barred the second hearing panel to recommend the expulsion sanction not recommended by the first hearing panel.[79] Having dismissed Dr. Park's federal claim, Judge Ditter did not consider the state law claims.[80]

13

Dr. Park appealed Judge Ditter's dismissal Order to the United States Court of Appeals for the Third Circuit.[81] The Court of Appeals vacated the dismissal of Dr. Park's claims, except for the denial of the due process claim against Dr. Sperrazza, and remanded the action.[82] The Court of Appeals found (1) Dr. Park sufficiently alleged a procedural due process claim against Dean Ismail for bias; (2) a procedural due process claim based on *res judicata* does not apply here; (3) Dr. Park "perhaps" made out a procedural due process claim against Temple University, but "le[ft] it to the District Court to consider in the first instance whether Temple may be subject to liability under *Monell*"[83]; (4) any procedural due process claim against Dr. Sperrazza is dismissed; and (5) on remand, the district court should consider the state law claims.

After remand and reassignment of this case to our docket, we entered a scheduling order and parties began taking discovery. The Temple Defendants now move for summary judgment.

## II.    Analysis[84]

After our Court of Appeals' decision, the remaining claims are (1) Dr. Park's due process claim against Dean Ismail based on allegations of his bias; (2) a possible *Monell* claim against Temple; and (3) the state law claims against Temple, Dean Ismail, and Dr. Sperrazza.

The Temple Defendants seek summary judgment arguing there is no evidence of Dean Ismail's bias to support a procedural due process claim; Dr. Park failed to allege a policy or custom sufficient to make a due process claim against Temple on a *Monell* theory of liability and failed to adduce any evidence to support such a claim; the breach of contract claim against Temple fails because student handbooks cannot form the basis of a breach of contract claim against public universities; the unjust enrichment claim against Temple fails because Dr. Park paid tuition in return for attending classes and clinics for which he received grades; and there is no evidence to support Dr. Park's defamation claim.

14

Dr. Park responds factual disputes regarding Dean Ismail's bias preclude summary judgment; a contract existed between Temple and Dr. Park; Dr. Park's work at Temple's dental clinic unjustly enriched it; and there is evidence "people knew about the details of the hearing that should not have" supporting his defamation claim. Dr. Park fails to address a *Monell* claim against Temple University.

## A. Dr. Park did not adduce evidence supporting a procedural due process claim.

Our Court of Appeals concluded Dr. Park's amended complaint, read in the light most favorable to him at the motion to dismiss stage, could allow a finding Dean Ismail is biased against him.[85] Our Court of Appeals found the amended complaint alleges: (1) after the first Hearing Panel recommended probation, "Defendants" convened a second hearing on Dean Ismail's insistence and as a "redo hearing" on the same charge and with the same core evidence to obtain the result Dean Ismail wanted—expulsion; (2) even though Dr. Park provided all information to Temple and did not violate any Temple rule, the second Hearing Panel recommended expulsion and Dean Ismail expelled him; (3) Dean Ismail concealed the repetitive nature of the hearings by selecting the same panel members for both hearings and withholding key information from Dr. Park, including the first Hearing Panel's recommended sanction of probation; and (4) Defendants "intimidated and/or dissuaded other Temple faculty from testifying on Dr. Park's behalf."[86]

Taking all these allegations as true at the motion to dismiss stage, our Court of Appeals found the amended complaint "plausibly alleges that [Dean] Ismail desired to expel [Dr.] Park and so manipulated the proceedings to achieve and conceal that goal."[87] Our Court of Appeals cautioned these allegations may turn out to be totally unfounded, but are adequately pleaded.

We are now at the summary judgment stage. We now examine whether Dr. Park identifies facts creating a genuine issue of material fact Dean Ismail's bias "so manipulated the proceedings"

15

to constitute a deprivation of due process. Because we find no genuine issue of fact in dispute, we enter judgment in favor of Dean Ismail on the procedural due process claim.

### 1. Procedural due process in the context of discipline in educational institutions.

To state a procedural due process claim under Section 1983, Dr. Park must show (1) a deprivation of "an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,'" and (2) "the procedures available to him did not provide 'due process of law.'"[88]

We are cautioned, when reviewing due process rights of students in state universities, "courts are generally ill-equipped to review subjective academic appraisals of educational institutions, and [the Supreme Court] admonished courts to permit university faculties a wide range of discretion in making judgments as to the academic performance of students."[89] We do not sit as a review committee on the merits of Temple's disciplinary decision.[90] We examine whether the requirements of procedural due process are met in Temple's disciplinary proceedings.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner"[91] by, in the area of school discipline, "[a]n impartial decisionmaker."[92] However, "administrative decisionmakers are presumed to be impartial, and only evidence of 'actual bias or a likelihood of bias' can support a due process claim."[93] An alleged prejudice "must be based on more than mere speculation and tenuous inferences."[94] The presumption administrative decisionmakers are impartial "is a rebuttable one, but the burden of rebuttal is heavy indeed: To carry that burden, the party claiming bias must lay a specific foundation of prejudice or prejudgment, such that the probability of actual bias is too high to be constitutionally tolerable."[95]

16

### 2. There is no evidence creating a genuine issue of fact as to Dean Ismail's actual bias or likelihood of bias.

Dean Ismail argues there is no evidence of his actual bias or the likelihood of bias, contending he had no pecuniary interest or other conflict of interest affecting his involvement in the process; he never met Dr. Park before the June 2, 2016 meeting and had no personal animosity toward him; he did not harbor prejudice against Dr. Park; he did not manipulate the selection of the Hearing Panels; he did not intimidate or dissuade any faculty member from testifying on Dr. Park's behalf or otherwise interfere with the fairness of the proceedings; he engaged the Honor Code process in the usual way and expelled Dr. Park only after a second hearing because the evidence showed Dr. Park lied and forged documents which Dean Ismail believed to be a "very serious problem in a health profession"; and, he did not sit on either panel evaluating the evidence, did not communicate with the Hearing Panel members, and ensured an independent appeal process.

Dr. Park responds his bias claim does not rest on a "conflict-of-roles argument."[96] Instead, he contends "Dean Ismail's administration of Dr. Park's Honor Board process exhibited actual bias or a very high likelihood of bias on his part, and that this bias infected the Honor Board panel members and the process."[97] Dr. Park argues Dean Ismail's bias deprived him of an impartial decisionmaker as evidenced by (a) Dean Ismail's bias against "forgers" and his belief he had been "lied to" evidencing his "preconceptions about Dr. Park's unfitness for the graduate dental program" which preconceptions "informed and compromised the disciplinary process that Temple pursued against [Dr. Park] from the very start"; (b) Dean Ismail's institution of charges against Dr. Park under the Honor Code based on a bias against forgers; (c) Dean Ismail convened the second Hearing Panel "for the sole purpose of highlighting an allegation that [he] felt sure had to win out, i.e., result in a more grave sanction"; (d) Dean Ismail violated "multiple Temple policies in achieving his desired outcome"; and (e) there is a "lack of a record of decision" by the first Hearing

17

Panel and Dean Ismail's notice to Dr. Park of the results of the second Hearing Panel is "misleading."[98]

### *There is no evidence of a "bias against forgers."*

Dr. Park argues Dean Ismail's bias against forgers and forgery biased the disciplinary procedures against him, including Dean Ismail's decision to bring charges under the Honor Code. There is no dispute Dr. Park forged a Certificate of Residency in Oral and Maxillofacial Surgery from the University of Southern California, admitted to charges brought by the California Dentistry Board, and voluntarily surrendered his license in response to the California charges. After giving Dr. Park a chance to explain the California licensure action—which Dean Ismail found not truthful—Dean Ismail made a decision to refer the matter to Temple's Honor Board.

Notwithstanding his admission of his conduct in California, Dr. Park does not agree his conduct violates the Honor Code, contending Dean Ismail's belief "that the commission of a forgery *at any time* – even before a student's enrollment at Temple – is grounds for expulsion"[99] constitutes a bias against forgers. Dr. Park points to Dean Ismail's deposition testimony he believed Temple had an obligation to protect patients; Dr. Park's failure to inform Temple of his forged certificate "is a major offense" and "a major violation of ethics and professionalism"; Dr. Park committed a violation "with us when [Dean Ismail] asked him on June 2[nd]" [and] committed the same violation when he didn't inform us of the suspension of the license in Texas in December 2014"; Dean Ismail relied on the Honor Code as the basis of Dr. Park's obligation to have notified Dean Ismail of his license suspensions, specifically the provision prohibiting the provision of "false or misleading information" including "forgery"; and violations of the Honor Code results in disciplinary action.

18

Dr. Park also points to Dean Ismail's deposition testimony identifying Dr. Park's "lie" regarding the reasons of his California licensure action, explaining forgery of a certificate is a "serious major offense that we need to manage or take care of" and attributed his decision to expel Dr. Park to his lies and forgery. Dr. Park additionally points to an email Dean Ismail sent to him on June 8, 2016 advising the matter will be referred to the Honor Board "because you have willingly admitted to the serious charges of the California Board of Dentistry yet failed to inform this dental school." Dr. Park then argues Dean Ismail's immediate suspension of his clinical privileges pending the Honor Board process evidences Dean Ismail's "jump[] to the conclusion that somewhere in Dr. Park's apparent and admitted malfeasance prior to his enrollment at Temple, there *must be* a violation of Temple's Honor Code."[100]

Dr. Park's argument makes no sense. Dean Ismail believed Dr. Park's failure to advise the Dental School of his licensing issues and his lack of truthfulness when asked to explain his California licensing issue constitutes a violation of the Honor Code. Dean Ismail referred the matter to Temple's Honor Board in accordance with the Honor Code. If we accept Dr. Park's argument, Temple could never refer any suspected violations of its Honor Code to the Honor Board because it would constitute "bias" against the suspected violation. Dr. Park cites no authority for his novel bias argument. We are not aware of authority finding a bias "against forgers" is actionable. Forging documents is a fact; it is a not a characteristic or physical condition. Dr. Park adduces no evidence to rebut the presumption of Dean Ismail's impartiality.

### *There is no evidence of bias by convening a second Hearing Panel or in the structure of the second Hearing Panel.*

Dr. Park next argues bias in Dean Ismail's convening a second Hearing Panel and structural prejudice in the composition and procedure of the second Hearing Panel. Dr. Park first disputes

19

the fact Dean Ismail convened a second Hearing Panel, arguing Dean Ismail convened the second Hearing Panel to reach his desired outcome; expulsion. But there is no evidence of this.

Under the Honor Code, the Hearing Panel, after hearing evidence and testimony, determines whether there is a violation of the Honor Code and recommends "appropriate sanctions to the dean."[101] The Dean "shall modify or accept the sanction ..."[102] Dean Ismail testified he made the decision to convene a second hearing because he determined the scope of the charges subject to the first hearing did not include Dr. Park's misstatements to Dean Ismail, Dr. Sperrazza, and Dr. Wada at the June 2, 2016 meeting regarding licensing issues.[103] Dean Ismail testified he had the authority under the Honor Code to modify the recommendation of the first Hearing Panel, but decided not to do so and convened a second Hearing Panel.[104] Dean Ismail testified he did not know why Dr. Park's misstatements at the June 2, 2016 meeting were not discussed in the first Hearing Panel because he is "not involved in the hearing, and [he is] not involved in terms of defining what the Honor Board would address" and when he read the record of the first Hearing Panel, he concluded "that before I make a decision, I need to conclude these issues. The lie is one of them, and not reporting to us about Texas and California, but specifically Texas for me, ... while [Dr. Park is] in the program."[105]

Even assuming Dean Ismail convened a second Hearing Panel because "[h]e just thought that the issue so central to him personally—the alleged 'lie' of June 2—was not 'very explicit' in the first Honor Board hearing ... [and] [a] second hearing was therefore convened for the sole purpose of highlighting an allegation that Dean Ismail felt sure had to win out, i.e., result in a more grave sanction," it does not provide us with evidence Dean Ismail "so manipulated the proceedings to achieve and conceal" the goal of expelling Dr. Park.

20

Dr. Park next disputes Dean Ismail's bias by selecting the same members of the first Hearing Panel as members of the second Hearing Panel. Dr. Park points to the Honor Code's requirement Hearing Panel members must not "be privy to 'any details relating to the charge or investigation until the time of the hearing,"[106] a requirement confirmed by Dr. Godel, the Chair of the Honor Board. Dr. Park argues because the composition of both hearing panels is the same (except for one member), Temple failed to comply with its policy. Dr. Park additionally cites Dr. Godel's deposition testimony the issue of the "lie" made at the June 2, 2016 hearing had been mentioned by a witness, Dr. Sperrazza, at the first hearing and Dr. Godel "admitted" the first hearing impacted "the way he thought or approached this second hearing."

Our Court of Appeals previously rejected the "same panel" argument, finding "a decisionmaker's prior familiarity with a case does not in itself suggest bias or unfairness"; "'[t]here is no evidence in the record ... which suggests bias[,]' whether on the basis of 'prior knowledge of the charge or academic misconduct' or otherwise"; and "[t]he second penal members' prior exposure to Park's case simply does not, standing alone, suggest unfairness in the disciplinary process."[107] Dr. Park adduces no other evidence suggesting unfairness in Temple's hearing process aside from the argument both panels were made up of nearly identical members.

Finally, Dr. Park argues there is evidence Dean Ismail manipulated the composition of the panel by "pick[ing] the panel members and that there was a pool of nine other faculty members available to serve for the second hearing but the same three were selected." Dr. Park points to two pieces of evidence in the record he believes shows Dean Ismail "manipulated the composition of the panel": Temple's answers to interrogatories and an email from Jo Ann Nyquist, the Honor Code Administrator, and Dean Ismail.

21

Dr. Park's interrogatory asked the Temple Defendants to "[e]xplain in detail how Defendants determine the individuals that comprise the members of the Honor Board during disciplinary hearings, including specifically how Defendants determined who would sit for each of Plaintiff's disciplinary hearings" and asked for the names of each panel member, how the members were chosen, identify communications to or from Honor Board members regarding the two hearings, and any conflict or background checks on the Honor Board members.[108] The Temple Defendants responded the Honor Code, Section III.B. "sets forth the process by which the Honor Board members are selected. In consultation with Dean Amid Ismail, Joann Nyquist, the Honor Code Administrator selected faculty and student panel members who were available during the time scheduled for the Honor Board hearings and were not in the Periodontology and Oral Implantology program."[109]

A June 13, 2016 email from Ms. Nyquist to Dean Ismail asks him to "review these appointed honor board faculty and let me know if you have any preference. If not I will select. I will invite 2 residents and Dr. Godel. We will need 2 more faculty members" and lists eight names.[110] Dean Ismail responded "I am not the one who will file the incident report. Leona shall do that[.] You will need a resident from endo and ortho to serve on the committee[.]"

These documents do not show Dean Ismail "manipulated the composition of the panel." The interrogatory answer plainly states Ms. Nyquist, Honor Code Administrator, in consultation with Dean Ismail, selects the faculty and student panel members available during the scheduled time and who are not in the same program as Dr. Park. Ms. Nyquist asked Dean Ismail to review the list of faculty members and "let [her] know" of any preference and, if he did not, she would select the faculty members. The email does not show Dean Ismail selected anyone on the list. Even if Dean Ismail selected two faculty members to serve on the second hearing panel, there is no

22

evidence he selected the three other members of either hearing panel and there is no evidence suggesting bias. Dr. Park asks us to make a "justifiable inference the procedural anomalies of this case were born from the bias of Ismail," but we have no evidence to make such an inference.

### *There is no evidence of bias in the alleged "lack of a record of decision" and "Dean Ismail's misleading report."*

Dr. Park argues "the lack of a record of decision" of the first Hearing Panel and Dean Ismail's "misleading report" of the first Hearing Panel evidences his "determination to have his bias about Plaintiff's putative offenses vindicated." Dr. Park takes issue with Dean Ismail's July 1, 2016 letter advising him only of the sanctions imposed "without providing any substantive discussion of the determinations made by the hearing panels."[111]

Dean Ismail's July 1, 2016 letter told Dr. Park of the Honor Board's findings from the June 23 and July 1 hearings; Dean Ismail's review of the recommended sanctions for each charge and his decision to impose a sanction of expulsion; and, advised Dr. Park of his internal appeal rights.[112] Dr. Park objects to Dean Ismail's failure to notify him about the recommended sanction (probation) from the first Hearing Panel and accuses Dean Ismail of "alter[ing] the sanction determined by the Conduct Board after the first hearing without notifying Plaintiff." Dr. Park objects to Dean Ismail's decision to "change the sanction to expulsion"; and "[i]t was very important to Dr. Ismail that the sanction resulting from each hearing be the same, because a harsher result for the second hearing might make the first hearing appear, to the astute observer, to have been a 'trial run' for the second," contending this "subterfuge worked very well" because neither Dr. Park nor his counsel knew "there had been a formal decision on a 'first hearing'" until weeks after Dr. Park filed his complaint.

Even if all this is true, it does not evidence bias to so manipulate a process as to deny due process. Under the Honor Code, Dean Ismail could "modify or alter" any decision of either

23

Hearing Panel. Dean Ismail advised Dr. Park of the charges and of his internal appeal rights and Dr. Park appealed. Dr. Park cannot identify how Dean Ismail's July 1, 2016 letter so evidences bias as to deprive him of an impartial decisionmaker.

Dr. Park asks us to find genuine issues of material fact based on his belief the Dean harbored a bias against "forgers." Even assuming the Dean does not favor admitted "forgers" in Temple's graduate school, Dr. Park did not adduce evidence the Dean's views towards "forgers" caused him to manipulate the process. The Dean did not interfere with Temple's normal processes. He did not preclude witnesses or cross-examination. We have no evidence he improperly contacted a Panel member. Upon a full record, the evidence confirms the Dean learned of Dr. Park's undisclosed "forgery" and lost licenses, referred the matter under Temple's policies, learned the charges in the first hearing did not include the concerns relating to representations made to the Dean in a separate meeting, and then awaited the Panel's reasoned decision. There is no evidence the Dean manipulated the process. There is no evidence the Dean deprived Dr. Park of an impartial decision maker.

### 3. We enter summary judgment in favor of Temple University on the due process claim.

Temple argues we must enter summary judgment in its favor on Dr. Park's procedural due process claim against it under 42 U.S.C. § 1983 because he failed to allege a claim under *Monell*. Temple cites our Court of Appeals' decision cautioning any claim against Temple must be brought under a *Monell* theory of liability.[113] In *Monell*, the Supreme Court held a local government cannot be held liable under Section 1983 under a theory of *respondeat superior*.[114] "[L]iability under § 1983 'can be imposed only when the alleged injury is inflicted as part of a government policy or custom.'"[115] Cases in this district treat Temple as a municipal subdivision.[116]

Temple argues Dr. Park failed to allege a policy or custom in his amended complaint or adduced any proof to support such a claim. Dr. Park does not address the Court of Appeals' directive regarding a claim against Temple University under *Monell*. Instead, Dr. Park appears to hold Temple University liable for Dean Ismail's alleged conduct. As a matter of law, there is no *respondeat superior* liability under Section 1983.

The amended complaint alleges "[a]ll of defendants' actions described herein were taken in accordance with Temple custom, policy, and/or practice."[117] Dr. Park does not identify the custom or policy or "specify what exactly that custom or policy was."[118] We are now at the summary judgment stage. Dr. Park, as the non-moving party, "must oppose the motion [for summary judgment] and, in doing so, 'may not rest upon the mere allegations or denial of his pleadings'" and "must set forth specific facts showing that there is a genuine issue for trial."[119] Dr. Park fails to mention *Monell* in his opposition to summary judgment, let alone point to evidence creating an issue of fact for trial on Temple's alleged liability under *Monell*. We enter summary judgment in favor of Temple University on the Section 1983 claim.

## B. Dr. Park did not adduce evidence supporting his state law claims.

The Temple Defendants move for summary judgment on Dr. Park's state law claims of breach of contract and unjust enrichment against Temple University and for defamation against Temple, Dean Ismail, and Dr. Sperrazza. We will enter summary judgment for Defendants on all claims.

### 1. We enter summary judgment for Temple University on the breach of contract claim.

Temple seeks summary judgment on Dr. Park's breach of contract claim arguing its "student handbook" is not a contract as a matter of law, and even if we construed Dr. Park's breach of contract claim to be based on something other than the handbook or "more than just the

25

handbook," there are no facts to support how Temple breached the contract or how he suffered

damages.

Dr. Park alleges his admission to Temple's graduate program is a contract Temple breached

when it expelled him. He alleges, *inter alia*:

- he "had a valid contract with [Temple], where [he] agreed to complete the program requirements and pay tuition, and [Temple] would provide [him] with an education and a degree/certificate upon completion of program requirements";[120]

- "[t]he requirements of the program were outlined in *student handbooks and other written postings* ..." on which he relied "when applying and agreeing to attend Temple";[121]

- "[t]he section of the contract at issue is whether [he] was 'providing false or misleading information,'" referring to Temple's Student Code of Conduct;[122]

- "[a]s constructors of the *written contract terms contained in the student handbook*, Temple had the ability to include a prohibition from concealing or failing to disclose certain information, which it failed to do";[123]

- "Temple breached the contract with [him] by expelling [him], contrary to *the letter of the code of conduct and other Temple materials* on which [he] relied ..."[124]

We cannot locate in the record a "student handbook," nor can we determine from the record

what Dr. Park considers "other written postings" he believes formed a contract with Temple. To

the extent Dr. Park alleges the Temple Student Code of Conduct and the Dental School's Honor

Code are the "student handbook" Temple allegedly breached, his claim fails as a matter of law.

As Temple argues, the breach of contract claim fails because, under Pennsylvania law, a student

handbook does not constitute a contract between a student and a public university.[125]

Dr. Park concedes a student handbook of a public university is not a contract under

Pennsylvania law. But he argues his breach of contract claim is not based on the "handbook *alone*"

and simply because Pennsylvania law does not recognize a student handbook as a contract does

not "eliminate the possibility that a contract could ever exist between a student and a public university." We have no idea what this means in this context. We recognize Temple could contract to have a student mow the lawn or perform another service. But we are nowhere near those types of issues.

Dr. Park argues the "elements of a contract and breach are established by fact" pointing to his deposition testimony a "separate packet and materials/representations from Temple" and "the website" "contributed to the formation of a contract.[126] He fixes Temple's obligations "under this contract … to provide the bargained for education, training and degree so long as [he] fulfilled the terms of his side of the bargain including following certain rules, fulfilling the requirements for acceptance, and paying tuition."[127] In a footnote, Dr. Park identifies "[t]he essential element of Temple's breach is the expulsion of Plaintiff without justification which Plaintiff has elicited substantial evidence of throughout this brief, and the corresponding denial of continued education, a degree, and training which was barged for would constitute damages."[128]

Dr. Park testified he had a contract with Temple under the student handbook; the fact he paid tuition; and "a set of rules to follow" Temple provided him on the first day of school including dress code, vacation time off, and sick days. Dr. Park testified he is not sure whether these "set of rules" are in "the handbook or a separate packet," but testified he received both.[129] The "separate packet" is not in the record.[130]

When asked at his deposition "[w]hat do you think Temple did in violation of any of those policies," in reference to the "packet" he received on the first day of school, Dr. Park responded "Again, I wouldn't know how to answer that question."[131] With regard to "the website," Dr. Park testified "The Temple program requirement on their website states that you don't need a state

27

license to be in the program."[132]  Dr. Park does not explain how the statement on the website creates a contract.

To sustain a breach of contract claim, Dr. Park must prove "(1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages."[133]  Temple argues, as a public university, the student handbook cannot constitute a contract; even if we construe a contract beyond the student handbook, Dr. Park could not identify how Temple breached a contract, pointing to his deposition testimony; and Dr. Park has not identified any damages.

Once Temple meets is burden of showing us "the basis for its motion, and identifying those portions of [the record] it believes demonstrate the absence of a genuine issue of material fact," Dr. Park has the burden of identifying specific facts to show there is a genuine issue of material fact for trial.[134]  Although we are required to examine the record in the light most favorable to Dr. Park as the nonmoving party, he must identify evidence supporting each element on which he has the burden of proof.

Dr. Park's opposition to summary judgment appears to be "Temple does not present undisputed facts to show that a contract does not exist"—an argument assuming a contract exists and then putting the burden on Temple to show a contract does not exist.  This misperceives Dr. Park's burden in opposing summary judgment.  Dr. Park fails to meet his burden on summary judgment to identify specific facts to show a genuine issue of material fact on a breach of contract claim for trial.  We enter summary judgment in favor of Temple on the breach of contract claim.

## 2. We enter summary judgment for Temple University on the unjust enrichment claim.

Dr. Park alleges he performed dental procedures at the Temple clinic and Temple did not pay him for the work he performed.  He also alleges he paid tuition to Temple for the graduate

program, but did not receive his certificate because Temple expelled him from its program. [135] Dr. Park alleges he believed he performed dental services at Temple's clinic "as part of a program … for which he would receive a certification in a specialized degree" but Temple wrongfully expelled him. He alleges Temple benefitted from his "participation in the clinical setting [and] was unjustly enriched by [his] participation in the program" and seeks compensation for "this extra value he added to the program."[136] To succeed on a claim for unjust enrichment, a plaintiff must show "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value."[137] There must be an enrichment and "an injustice resulting if recovery for the enrichment is denied."[138]

Temple argues, as a matter of law, there can be no unjust enrichment claim by a student who, after paying tuition and attending classes, is expelled before the completion of his degree. Temple also argues there is no case authority supporting an unjust enrichment theory where a university receives revenue for services a student performs as part of his coursework.

Dr. Park responds Temple misstates his unjust enrichment claim. Dr. Park concedes he paid tuition and attended classes and clinics, but contends his claim is not based on the payment of tuition in exchange for attending classes and clinics. He argues his claim arises from compensation and "other benefits" Temple received—in the form of payment from clinic patients— for service he performed at the clinic.[139]

There is no dispute Dr. Park paid tuition to Temple and he attended classes and clinic for which he received credit towards the graduate program in periodontics.[140] We agree with our colleagues rejecting unjust enrichment claims brought by students against universities where the student fails to allege how it is unconscionable for a university to retain tuition payment for classes

attended by the student.[141] Dr. Park clarifies his claim "does not rely on class attendance or payment of tuition."[142] Rather, he contends his unjust enrichment claim is based on Temple's receipt of payment from patients for dental work he performed and, when Temple expelled him from its graduate program, it unjustly "retain[ed] the profits of his free labor." Dr. Park argues he performed dental services at Temple's clinic relying on the expectation he would receive "a specialized degree and increased future earning potential."

Dr. Park does not cite a single case to support this unjust enrichment theory or explain how there is resulting injustice if Temple retained payments for dental services Dr. Park performed as a part of his clinical training in the program. There is no allegation Dr. Park continued to perform dental services at the clinic after Temple expelled him.

We grant summary judgment in Temple's favor on this unjust enrichment theory.

### 3. We enter summary judgment for Temple University, Dean Ismail, and Dr. Sperrazza on the defamation claim.

Temple, Dean Ismail, and Dr. Sperrazza seek summary judgment on Dr. Park's defamation claim. To succeed on a claim for defamation under Pennsylvania law, Dr. Park must show: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion.[143]

Dr. Park alleges the "Defendants" accused him of "providing false or misleading information" and publicized this accusation "to many faculty, staff, and students in the program" even though accusations and Honor Board hearings are supposed to be confidential.[144] Dr. Park alleges the "individual defendants"—Dean Ismail and Dr. Sperrazza—"openly discussed and

30

disseminated intimate details regarding the false accusations and hearing with the general Temple student and faculty body as well as other third parties."[145]

The Defendants argue Dr. Park's claim is based only on his belief "people were talking about him," and fails to identify statements made by a defendant capable of defamatory meaning; the identity of recipients of the alleged defamatory statements; an understanding by a recipient of its defamatory meaning; and harm. The Defendants cite Dr. Park's deposition testimony where he did not know how "people at Temple" knew about his case. Dr. Park testified "everyone at Temple, from what I heard, that they know about my case. How? I don't know."[146] Dr. Park also testified "other faculties [sic] asked my colleagues about what happened to me, and my colleagues did not disclose any information. So the faculties [sic] just went to talk with someone and then got the information about what happened with my case" but "ha[d] no idea" the "someone" who is allegedly to have given information to other faculty members.[147]

Dr. Park admits his deposition testimony. But he then argues just because he doesn't remember or cannot identify facts "is not equivalent to admitting the opposite" and contends he need not, at his deposition, "proffer affirmative proof of all elements of a claim in order for that claim to survive a motion for summary judgment."[148] He argues simply because his deposition testimony does not "constitute proof of a defamation claim" does not mean "that it is proof that there is no claim for defamation" and contends it is enough for him to "indicate[] that people knew about the details of the hearing that should not have, and that they were made privy not by him" and "it is justifiable inference to conclude that this information was disseminated by Ismail and Sperazza [sic] who were the two parties that had the intimate/confidential/false details that were disclosed."[149]

31

Dr. Park misunderstands his obligations in litigation. He cannot posit theories and hope we infer facts. We are at the summary judgment stage. Once the Defendants cite evidence—Dr. Park's deposition testimony where he could not identify facts to support his defamation claim—showing no dispute of material facts, the burden shifts to Dr. Park to present evidence showing a genuine issue for trial. Dr. Park adduces no evidence creating a genuine issue of fact on an element of a defamation claim; a claim for which he bears the burden of proof at trial. We have no idea who said what to whom. And we have no evidence Dean Ismail or Dr. Sperrazza said made any statements to anyone. We cannot, as Dr. Park suggests we do on summary judgment, simply "infer" it must be either Dean Ismail or Dr. Sperrazza, because they "were the two parties" with the knowledge of the details without any evidence in the record.[150] Dr. Park failed to adduce evidence creating a genuine issue of material fact Temple or Dean Ismail or Dr. Sperrazza defamed him.

We reject Dr. Park's argument attempting to base his defamation claim on the Temple Defendants' motion for summary judgment. Dr. Park contends the Temple Defendants' alleged defamation "has continued" in paragraph 23 of their Statement of Undisputed Fact submitted with their motion for summary judgment.[151] Under Pennsylvania law, "statements made by judges, attorneys, witnesses and parties in the course of or pertinent to any stage of judicial proceedings are absolutely privileged and, therefore, cannot form the basis for liability for defamation."[152]

We enter judgment in favor of the Temple Defendants on the defamation claim.

## III. Conclusion

Dr. Park failed to adduce evidence necessary to defeat summary judgment. He did not show a bias against "forgers," even if one should exist, caused the Dean to manipulate Temple's disciplinary processes. He failed to adduce evidence of Temple's supervisory liability for an alleged civil rights violation. He failed to adduce evidence supporting supplemental state law

claims for breach of a non-existent contract, unjust enrichment because he provided services in a Temple dental clinic as a student, or for defamation based on unidentified statements made by unidentified persons at unidentified times concerning his expulsion. We enter summary judgment for the Defendants in the accompanying Order.

---

[1] Our Policies require a Statement of Undisputed Material Facts ("SUMF") and an appendix in support of summary judgment. Defendants filed their SUMF and appendix at ECF Doc. No. 50. Mr. Park responded to Defendants' SUMF and supplemented the appendix with additional exhibits. ECF Doc. No. 59. Defendants replied at ECF Doc. No. 61. References to exhibits in the appendices shall be referred to by Bates number, for example, "Appx. 1a."

[2] In addition to the identified defendants, Dr. Park sues "John Does 1-10" whom he alleges "are all individuals (or entities) not yet identified that participated in the alleged facts of this complaint." ECF Doc. No. 19 at ¶ 5. Neither party addressed the John Doe allegations in the summary judgment briefing, or at any time in the course of this litigation. The John Doe defendants "remain parties to this action unless and until they are formally dismissed either by stipulation of the parties or by order of this Court." *Atl. Used Auto Parts v. City of Phila.*, 957 F.Supp. 622, 625 (E.D. Pa. 1997) (citations omitted). "In our Court, fictitious names may be used 'at least until reasonable discovery permits the actual defendants to assume their places.'" *Id.* (citations omitted). "If reasonable discovery does not unveil the proper identities ... the John Doe defendants must be dismissed." *Blakeslee v. Clinton Cnty.*, 336 F.App'x 248, 250 (3d Cir. 2009); *Atl. Used Auto Parts* at 625 (citation omitted).

Discovery is completed. Dr. Park decided not to move to amend the complaint. We dismiss the John/Jane Does 1-10 defendants under Federal Rule of Civil Procedure 21 which provides "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party."

[3] SUMF at ¶ 1 (ECF Doc. No. 50).

[4] *Id.*

[5] *Id.* at ¶ 2; Appx. 14a (ECF Doc. No. 50-3).

[6] *Id.* at ¶¶ 2-4.

[7] Appx. 10a-18a.

[8] Appx. 23a-27a (ECF Doc. No. 50-5).

[9] Appx. 144a, 146a-148a, 162a.

[10] Appx. 150a.

[11] SUMF at ¶ 13; Appx. 164a.

[12] Appx. 166a-169a (ECF Doc. No. 50-21).

[13] SUMF at ¶ 15.

[14] Response to SUMF at ¶ 16 (ECF Doc. No. 59-1).

[15] SUMF at ¶ 20.

[16] Appx. 207a.

[17] *Id.*

[18] SUMF at ¶ 23.

[19] Response to SUMF at ¶ 23.

[20] SUMF at ¶ 21.

[21] SUMF at ¶ 22; Appx. 193a.

[22] SUMF at ¶ 35; Appx. 195a, 197a; 198a.

[23] SUMF at ¶ 24.

[24] SUMF at ¶ 25.

[25] Appx. 48a. (Dr. Park deposition at 76).

[26] *Id.*

[27] SUMF at ¶ 30; Appx. 48a (Dr. Park deposition at 76).

[28] SUMF at ¶¶ 26, 29.

[29] Appx. 229a.

[30] *Id.*

[31] Appx. 231a.

[32] *Id.*

[33] *Id.*

[34] Appx. 233a.

[35] *Id.*

[36] Appx. 235a.

[37] *Id.*

[38] Kornberg School of Dentistry Honor Code, Art. III, § B at Appx.198a.

[39] *Id.* The twelve pre-doctoral students on the Honor Board are selected by each class in the Dental School; the post-graduate residents on the Board are selected by Program Directors; and the twelve faculty members are selected by the Dean. *Id.* Graduate student Honor Board members are selected for hearings involving graduate students. *Id.*

[40] *Id.*

[41] Honor Code, Art. III, § E.1. at Appx. 200a.

[42] Honor Code, Art. III, §§ E.1, 6 at Appx. 200a-201a.

[43] Honor Code, Art. III, § E.4 at Appx. 200a.

[44] Honor Code, Art. III, § E.5 at Appx. 201a.

[45] Honor Code, Art. III., § E.13 at Appx. 201a.

[46] Honor Code, Art. III, § E.14 at Appx. 202a.

[47] Appx. at 262a.

[48] Appx. 262a-268a. The specific code violation is found at Article III, Section C. 10 of the Student Code of Conduct (emphasis added). Appx. 245a-246a.

[49] SUMF at ¶ 42; Appx. 171a.

[50] SUMF at ¶ 44; Appx. 186a.

[51] Appx. 187a. As noted above, Article III, § C.10.b. prohibits "[p]roviding false or misleading information during a disciplinary proceeding or investigation related to potential policy violations."

[52] SUMF at ¶ 46.

[53] SUMF at ¶ 47.

[54] Response to SUMF at ¶¶ 46-49 (ECF Doc. No. 59-1).

[55] Appx. 353a-359a.

[56] *Compare* Appx. 263a *with* Appx. 353a-354a. The first Notice of Disciplinary Action specified only "[f]ailure to inform the [Dental School] of the voluntary surrender of your license to practice dentistry by the California Board of Dentistry." Appx. 262a.

[57] Appx. 353a-354a.(emphasis in original).

[58] SUMF at ¶ 50, Appx. 210a.

[59] Appx. 224a.

[60] Appx. 225a.

[61] Appx. 395a.

[62] Appx. 395a. Footnote to Student Conduct Code at Article III, Paragraph C. omitted from Charge 1 and footnote to Article III, Paragraph C.[10].b. omitted from Charge 2.

[63] Appx. 395a-396a.

[64] Appx. 396a.

[65] Appx. 398a-405a.

[66] Honor Code, Art. III, § G. at Appx. 203a.

[67] *Id.*

[68] *Id.*

[69] *Id.*

[70] *Id.*

[71] *Id.*

[72] SUMF at ¶ 53; Appx. 408a.

[73] Appx. 409a.

[74] Appx. 411a-412a.

[75] *Id.*

[76] ECF Doc. No. 19 at ¶¶ 130, 135.

[77] ECF Doc. Nos. 20, 25.

[78] ECF Doc. No. 32.

[79] ECF Doc. No. 31. Judge Ditter did not allow Dr. Park to amend his due process claim as futile.

[80] *Id.*

[81] ECF Doc. No. 33.

[82] *Park v. Temple Univ.*, 757 F. App'x 102 (3d Cir. 2018).

[83] *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978).

[84] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.,* 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). On a motion for summary judgment, "we view the facts and draw all reasonable inferences in the light most favorable to the nonmovant." *Pearson*, 850 F.3d at 533-34 (3d Cir. 2017) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643 (citing *Celotex Corp.*, 477 U.S. at 322-323).

[85] *Park*, 757 F. App'x at 108.

[86] *Id.*

[87] *Id.*

[88] *Hill v. Borough of Kutztown,* 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). There is no dispute Temple University is a state actor. *Osei v. Temple Univ. of Commonwealth Sys. of Higher Educ.*, No. 10-2042, 2011 WL 4549609, at * 7

(E.D. Pa. Sept. 30, 2011), *aff'd*, 518 F.App'x 86 (3d Cir. 2013). The Temple Defendants do not dispute Dr. Park has a property interest in the continuation of his graduate study protected by procedural due process. *Manning v. Temple Univ.*, No. 03-4012, 2004 WL 3019230, at * 8 (citing *Ross v. Pa. State Univ.*, 445 F.Supp. 147, 152 (M.D. Pa. 1978)).

[89] *Hankins v. Temple Univ. (Health Sci. Ctr.)*, 829 F.2d 437, 4444 (3d Cir. 1987) (citing *Bd. of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78 (1978) and *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214 (1985)).

[90] *See e.g. Segal v. Temple Univ. Sch. of Law*, No. 99-3220, 1999 WL 1210838, at *1 (E.D. Pa. Dec. 8, 1999) ("Universities like Temple are entitled to establish their own rules and regulations, including disciplinary proceedings, and the courts should interfere only where it is clear that Constitutional rights have been infringed").

[91] *Ferris v. Milton S. Hershey Med. Ctr.*, 701 F.App'x 91, 96 (3d Cir. 2017) (quoting *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976)).

[92] *Park*, 757 F.App'x at 106 (citing *Sill v. Pa. State Univ.*, 462 F.3d 462, 469 (3d Cir. 1972)).

[93] *Id.* (citing *Matter of Seidman*, 37 F.3d 911, 924-26 (3d Cir. 1994)).

[94] *Osei v. Temple Univ. of Commonwealth Sys. of Higher Educ.*, No. 10-2042, 2011 WL 4549609, at * 11 (E.D. Pa. Sept. 30, 2011), *aff'd*, 518 F.App'x 86 (3d Cir. 2013); *see also Simms v. Pa. State Univ.-Altoona*, No. 17-201, 2018 WL 1413098, at * 7 (W.D. Pa. Mar. 20, 2018) (on motion to dismiss, allegations of conduct board's bias as "overly dismissive" of plaintiff's position "as evidenced by their body language" and racial composition of conduct board as making a "predetermined decision to suspend" plaintiff failed to "provide the requisite evidence of bias required to plausibly give rise to a procedural due process claim").

[95] *Hess v. Bd. of Trustees of S. Ill. Univ.*, 839 F.3d 668, 676 (7th Cir. 2016) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)).

[96] ECF Doc. No. 59-2 at 12.

[97] ECF Doc. No. 59-2 at 12-13. Dr. Park contends "[i]t is of little moment" Dean Ismail did not personally sit on either of the panels because Dr. Park convened the Honor Board, determined the specification of charges, selected the Honor Board panel, advised the Honor Board panel on the substance to be covered at the hearings, and made the final determination of responsibility and the sanction after recommendation in each case. *Id.* at n. 9.

[98] ECF Doc. No. 59-2 at 13-20. Although our Court of Appeals found Dr. Park's allegation Defendants, *inter alia*, "intimidated and/or dissuaded other Temple faculty from testifying on Dr. Park's behalf" as plausibly alleging a procedural due process claim, Dr. Park does not mention this allegation or adduce evidence of any intimidation or dissuasion in his response to summary judgment.

[99] ECF Doc. No. 59-2 at 14 (emphasis in original).

[100] ECF Doc. No. 59-2 at 15-16 (emphasis in original).

[101] Honor Code, Art. III., § E.13 at Appx. 201a.

[102] Honor Code, Art. III, § E.14 at Appx. 202a.

[103] Appx. 459a-460a (Dean Ismail deposition at 109-110).

[104] Appx. 460a (Dean Ismail deposition at 111).

[105] Appx. 460a (Dean Ismail deposition at 111-12).

[106] Honor Code, Art. III, § D.3 at Appx. 200a.

[107] *Park*, 757 F. App'x at 106-07 (quoting *Nash v. Auburn Univ.*, 812 F.2d 655, 666 (11th Cir. 1987).

[108] Appx. 304a.

[109] *Id.*

[110] Appx. 519a.

[111] ECF Doc. No. 59-2 at 19.

[112] Appx. 395a-396a.

[113] *Park*, 757 F. App'x at 108, n. 12.

[114] *Monell*, 436 U.S. at 691.

[115] *Franks v. Temple Univ.*, No. 11-879, 2011 WL 1562598, at \*3 (E.D. Pa. Apr. 26, 2011) (quoting *Wnek v. City of Phila.*, No. 05-3065, 2007 WL 1410361, at \*2 (E.D. Pa. May 10, 2007)).

[116] *Id.* (collecting cases).

[117] ECF Doc. No. 19 at ¶ 109

[118] *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009).

[119] *D.E. v. Central Dauphin Sch. Dist.*, 765 F.3d 260, 268-69 (3d Cir. 2014) (citation omitted).

[120] ECF Doc. No. 19 at ¶ 157.

[121] *Id.* at ¶ 160 (emphasis added).

[122] *Id.* at ¶ 163.

[123] *Id.* at ¶ 166 (emphasis added).

[124] *Id.* at ¶ 169 (emphasis added).

[125] *See Johnson v. Temple Univ.-of the Commonwealth Sys. of Higher Educ.*, No. 12-515, 2013 WL 5298484, at * 13 (E.D. Pa. Sept. 19, 2013) (collecting cases). *See also Howe v. Pennsylvania St. Univ.-Harrisburg*, No. 16-102, 2016 WL 393717, at * 4 (M.D. Pa. Feb. 2, 2016) (Pennsylvania courts "declin[e] to construe the student handbook of a public university as a contract between the public university and the student") (quoting *Tran v. State Sys. of Higher Educ.*, 986 A.2d 179, 183 (Pa. Commw. 2009)).

[126] ECF Doc. No. 59-2 at 22.

[127] *Id.*

[128] *Id.* at 22, n. 12.

[129] Notes of Testimony ("N.T.") of Dr. Park at pp. 125-126 (Appx. 60a-61a).

[130] When Dr. Park testified to receipt of a "separate packet" at his deposition, Temple's counsel requested "for the packet to be produced." Appx. 60a. Dr. Park's counsel responded: "Okay. We'll see if we've got it." *Id.* It appears the only document produced from the packet is a Graduate Periodontology and Oral Implantology Clinical Protocol which Dr. Park admittedly breached on three occasions. Appx. 421a; 423a-425a;

[131] *Id.* at p. 126 (Appx. 61a).

[132] N.T. Dr. Park at p. 57 (Appx. 43a).

[133] *CoreStates Bank, Nat'l Ass'n v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999).

[134] *Celotex Corp. v. Catrett*, 47 U.S. 317, 323 (1986).

[135] ECF Doc. No. 19 at ¶¶ 156-172; 173-188.

[136] *Id.* at ¶ 188.

[137] *Durst v. Milroy Gen. Contracting, Inc.*, 52 A.2d 357, 360 (Pa. Super. 2012); *Global Ground Support, LLC v. Glazer Enter., Inc.*, 581 F.Supp. 2d 669, 675 (E.D. Pa. 2008) (citing *Com. ex. rel. Pappert v. TAP Pharm. Prods., Inc.*, 885 A.2d 1127, 1137 (Pa. Commw. 2005)).

[138] *Torchia on Behalf of Torchia v. Torchia*, 499 A.2d 581, 582-83 (Pa. Super. 1985) (quoting *Samuels v. Hendricks*, 445 A.2d 1273, 1275 (Pa. Super. 1982)).

[139] ECF Doc. No. 59-2 at 23.

[140] *Id.*; Appx. 427a.

[141] *See e.g. David v. Neumann Univ.*, 177 F.Supp. 3d 920, 926 (E.D. Pa. 2016) (dismissing unjust enrichment claim where plaintiff student failed to allege how it would be unconscionable for university to retain tuition paid for classes student attended); *Bradshaw v. Pa. State Univ.*, No. 10-4839, 2011 WL 1288681, at * 2 (E.D. Pa. Apr. 5, 2011) (dismissing with prejudice unjust enrichment claim for failing to allege university failed to hold classes for which student paid tuition or prevented student from attending classes).

[142] ECF Doc. No. 59-2 at 23.

[143] 42 Pa.C.S.A. § 8343.

[144] ECF Doc. No. 19 at ¶¶ 190-193.

[145] *Id.* at ¶ 193.

[146] N.T. Dr. Park at 142 (Appx. 65a).

[147] *Id.*

[148] ECF Doc. No. 59-2 at 25.

[149] *Id.*

[150] Even if we were to entertain such an inference, the facts do not support an inference. The record reflects Dean Ismail and Dr. Sperrazza were not the only two people with information; there were six members of the Hearing Panel who had information regarding Dr. Park's disciplinary action.

[151] ECF Doc. No. 59-2 at 25, n.13.

[152] *Schatzberg v. State Farm Mut. Auto. Ins. Co.*, 877 F.Supp. 2d 232, 246-47 (E.D. Pa. 2012) (citing *Pawlowski v. Smorto*, 588 A.2d 36, 41 (Pa. Super. 1991)).